# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LIAM WEST-CAMPEAU, suing individually and on behalf of a class of similarly-situated persons,

        Plaintiff,

v.

ROBERT DUNLAP, sued in his individual capacity, and JOHN DOES 1-5, sued in their individual capacities, RAPHAEL WASHINGTON, in his official capacity, and WAYNE COUNTY MICHIGAN,

        Defendants.

Case No. 2:24-cv-12751

Hon. Mark A. Goldsmith

Mag. Judge David R. Grand

---

### CORRECTED MOTION TO ABSTAIN, TO DISMISS, AND/OR FOR SUMMARY JUDGMENT BY DEFENDANTS CHIEF ROBERT DUNLAP, THE WAYNE COUNTY SHERIFF, AND WAYNE COUNTY

Pursuant to E.D. Mich. L.R. 7.1(a), the undersigned counsel certifies that on December 13, 2024, he communicated in writing with counsel for Plaintiff Liam West-Campeau ("Plaintiff"), explained the nature of the relief sought by way of this motion, and sought concurrence in the relief. On the same day, Plaintiff's counsel thereafter expressly denied concurrence.

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56, Defendants Chief Robert Dunlap, the Wayne County Sheriff, and Wayne County (collectively "Defendants") move for the Court to abstain, to dismiss, and/or for summary judgment on the claims asserted against them by Plaintiff.  In support of their motion, Defendants rely upon the attached Brief.

Dated: December 18, 2024

Respectfully submitted,

By: /s/ *Davidde A. Stella*
Davidde A. Stella (P69948)
Anthony P. Monticciolo (P76013)
Assistant Corporation Counsel
Wayne County Corporation Counsel
500 Griswold St., 30th Floor
Detroit MI 48226
(313) 224-5030
dstella@waynecountymi.gov

*Attorneys for Defendants Chief Robert Dunlap, the Wayne County Sheriff, and Wayne County*

ii

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

LIAM WEST-CAMPEAU, suing
individually and on behalf of a class
of similarly-situated persons,

        Plaintiff,

v.

ROBERT DUNLAP, sued in his
individual capacity, and JOHN
DOES 1-5, sued in their individual
capacities, RAPHAEL
WASHINGTON, in his official
capacity, and WAYNE COUNTY
MICHIGAN,

        Defendants.

Case No. 2:24-cv-12751

Hon. Mark A. Goldsmith

Mag. Judge David R. Grand

---

**CORRECTED BRIEF IN SUPPORT OF MOTION TO ABSTAIN,
TO DISMISS, AND/OR FOR SUMMARY JUDGMENT
BY DEFENDANTS CHIEF ROBERT DUNLAP,
THE WAYNE COUNTY SHERIFF, AND WAYNE COUNTY**

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Should the Court abstain from adjudicating the Fourteenth Amendment civil claim asserted by Plaintiff Liam West-Campeau to the pending state court criminal proceedings?

2.      Alternatively, would Defendant Chief of Jails Robert Dunlap be entitled to qualified immunity on the Fourteenth Amendment civil claim asserted against him in his individual capacity?

3.      Alternatively, does the municipal liability claim asserted against Wayne County raise a genuine issue of material fact?

## CONTROLLING OR MOST APPPROPRIATE AUTHORITY

*Aaron v. O'Connor*, 914 F.3d 1010 (6th Cir. 2019).

*American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328 (6th Cir. 2007).

*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988 (6th Cir. 2017).

*Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022).

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013).

*Campbell v. Riahi*, 109 F.4th 854 (6th Cir. 2024).

*Connick v. Thompson*, 563 U.S. 51 (2011).

*Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012).

*Jones v. Bottom*, 85 F.4th 805 (6th Cir. 2023).

*Juidice v. Vail*, 430 U.S. 327 (1977).

*Kentucky v. Graham*, 473 U.S. 159 (1985).

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

*Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006).

*Thomas v. City of Chattanooga*, 398 F.3d 426 (6th Cir. 2005).

*Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. 2005).

*Younger v. Harris*, 401 U.S. 37 (1971).

## STATEMENT OF MATERIAL FACTS

### The State Court Criminal Case

1.      On September 11, 2023, Plaintiff Liam West-Campeau ("Plaintiff") pled guilty to attempted carrying of a concealed weapon.  On November 8, 2023, the Wayne County Circuit Court sentenced him to 12 months of probation and a fine. (Exhibit 1, 11/8/23 Order of Conviction & Sentence; Exhibit 2, State Court Docket).

2.      On or about September 17, 2024, a probation officer requested a warrant from the Wayne County Circuit Court for Plaintiff's arrest for a possible violation arising from an incident that occurred in Macomb, Michigan on July 28, 2024.  (Exhibit 3, Warrant Request).  The next day, the Wayne County Circuit Court authorized the warrant.  (*Id*.).

3.      On October 8, 2024, Plaintiff was arraigned on the probation violation. (Exhibit 4, Recall of Warrant).  The same day, the Wayne County Circuit Court entered an order of pretrial release on the conditions of a personal bond plus the installation of a GPS tether for work hours (6:30 a.m. to 6:30 p.m.) and no alcohol consumption.  (Exhibit 5, 11/8/24 Order).

### The Tether Process

4.      The Wayne County Sheriff's Office (the "WCSO") maintains a Tether Unit whose duties include processing state court pretrial detention orders that include tether provisions, assessing individuals' eligibility for the tether program,

enrolling them in the program, and then monitoring them for compliance.  (Exhibit 6, Lt. Rivers Decl. ¶ 2).

5.     The WCSO does not permit private tethering companies to assume these duties unless the state court specifically orders that a private company can be used.  (*Id*. ¶ 3).  Plaintiff's relevant state court order contained no such provision.

6.     The Tether Unit usually must process approximately the 25-50 individuals per day who receive state court orders including a tether condition.  (*Id*. ¶ 4).  Processing individuals for tether generally includes the following steps: (1) consulting law enforcement networks for any holds or open warrants by other police agencies; (2) assessing one's eligibility for tether, which can include a number of factors, like the consideration of certain categories of prior misdemeanor and felony convictions, prior OWIs, prior tether order compliance, identifying past victims of the individual, etc.; (3) assessing whether the individual has a valid and confirmable address from which a tether can be monitored, which can also include verification of a place of work and work schedule; (4) the tether participant reviewing and then completing the required paperwork and agreements; and (5) arrangements for payment or payment plans. The WCSO uses law enforcement databases and other means to run many of these required verifications. In the normal course, the processing for the tether program typically takes about 24 to 72 hours from the

2

receipt of a court order. The courts, prosecutors, and defense counsel are aware that this has been the normal processing time.  (*Id.*).

The October 2024 Cyber Incident

7.       On October 2, 2024, Wayne County computer systems, including those at the WCSO, were significantly impacted by a large outside cyberattack.  (Exhibit 7, Sgt. Foreman Decl. ¶ 2).  The timeline of events as they pertain to the WCSO is detailed in Exhibit 7.[1]  By October 15, 2024, the WCSO was able to restore access to most of its electronic systems and databases.

8.       The cyber incident that began on October 2, 2024, had a significant impact on the operation of the Tether Unit. (Exhibit 6, Lt. Rivers Decl. ¶ 5). The electronic databases necessary for processing tether participants went offline.  (*Id.*). As a preventative measure, many state courts also severed electronic communications with the WCSO.  (*Id.*).  The loss of the databases and routine electronic court communications meant that the WCSO could not access any electronic records in the queue for tether, including their personally identifying information and their court orders.  (*Id.*).  The Tether Unit could not access its required electronic tools and recordkeeping systems.  (*Id.*).  Additionally, the WCSO

---

[1] Because of the nature of this cyberattack and its response, and because the law enforcement investigation into it remains ongoing, Defendants have requested that Exhibit 7 remain filed under seal.

3

had to create a manual backup paper system for each and every individual housed in the Jail. (*Id.*). This was a significant effort. (*Id.*).

9. Because the cyber incident eliminated access to the database information for those already "in line" for tether on October 2, 2024, a rolling backlog in processing individuals with tether orders inevitably occurred. (*Id.* ¶ 6). The lack of access to electronic records and databases significantly increased the normal time it took to process tethering requirements. (*Id.*).

10. Unfortunately, at the time of Plaintiff's October 8, 2024 arraignment, the Tether Unit was still experiencing the significant and acute impacts of the cyber incident. (*Id.* ¶ 7). Despite the backlog caused by the cyber incident, Plaintiff was added to the list and processed as soon as a manual count revealed that he was one of approximately 100+ individuals who had been authorized for tether by the state courts, provided that they met the specified qualifications. (*Id.*).

11. Despite the facts that all relevant information regarding each individual had to be manually recreated on a person-by-person basis, and the remainder of the normal tether process had to be followed without regular or consistent access to the necessary databases and resources, the Tether Unit was able to approve and enroll Plaintiff for tether release on October 14, 2024. (*Id.* ¶ 8).[2]

---

[2] To the extent that the Complaint alleges that the Wayne County Jail houses "2,500" individuals, that is not accurate. The Jail houses approximately 1,400 adult detainees and inmates. (Exhibit 8, Chief Dunlap Decl. ¶ 4).

12.     Because the cyber incident effects have now been resolved, there are currently no unusual delays in processing state court tether orders.  (*Id*. ¶ 9).

13.     After several adjournments, Plaintiff's probation violation hearing in Wayne County Circuit Court is currently scheduled for December 20, 2024.  (Exhibit 2).

The Present Lawsuit

14.     On or about October 17, 2024, three days after his release from the Wayne County Jail, Plaintiff filed the present civil case against Chief of Jails Robert Dunlap in his personal capacity, the Wayne County Sheriff, and Wayne County[3] (collectively "Defendants") asserting one claim under 42 U.S.C. § 1983 – violation of the Fourteenth Amendment for "over detention / excessive custody."  The Complaint essentially alleges that the WCSO has a "policy" or "practice" of intentionally delaying without justification the release of individuals whose terms and conditions of detention or sentence had been fulfilled or expired.

Defendants request that the Court dismiss Plaintiff's claims on the following legal bases: (1) *Younger* abstention; (2) qualified immunity for Chief Dunlap; and

---

[3] To the extent that Plaintiff names the elected Wayne County Sheriff, Raphael Washington, in his "official capacity," this is legally the same as suing Wayne County itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).  For the purposes of this motion, "Wayne County" shall include the "Wayne County Sheriff."

5

(3) the failure to raise a cognizable and plausible municipal liability claim against Wayne County.

## ARGUMENT

### A.   The Court Should Abstain Under *Younger v. Harris* to the State Court Criminal Case.

Because Plaintiff remains subject to a criminal case in which he can raise any alleged issues regarding the WCSO's timely compliance with state court orders governing pretrial detention and bond conditions, the Court should consider abstaining from adjudicating his Fourteenth Amendment civil claim.  Under the *Younger* abstention doctrine, federal courts should abstain from deciding matters that would interfere with state criminal proceedings unless extraordinary circumstances exist.  *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971).  *Younger* abstention is required when: (1) there is an ongoing state court criminal proceeding; (2) the criminal proceeding implicates important state interests; and (3) there is an adequate opportunity in the state court case to raise constitutional challenges.  *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) (citation omitted).  Exceptions to this doctrine exist only where the plaintiff can show "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).  All relevant *Younger* criteria are satisfied here.

First, Plaintiff remains subject to a state court criminal proceeding. (Exhibit 2). If the state court finds that Plaintiff violated his probation, it can order a number of different outcomes, included but not limited to a period of incarceration or an additional extension of his period of probation.

Second, as a matter of law, the criminal proceedings implicate important state interests. *See Younger*, 401 U.S. at 43 (recognizing that the policy against federal interference with ongoing state court criminal proceedings is "particularly" strong). In the context of abstention, the Supreme Court has recognized that "the States have important interests in administering certain aspects of their judicial systems." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987). Because Plaintiff's claims here essentially amount to an argument that the WCSO did not comply with a state court tether order in a reasonable amount of time, the state courts presumably have a strong interest in ensuring that their own orders are enforced. *See, e.g., Aaron v. O'Connor*, 914 F.3d 1010, 1017 (6th Cir. 2019) (where, for the purposes of *Younger* abstention, the Sixth Circuit stated: "We conclude that the ability of the courts of the State of Ohio to determine when recusal of a judge or justice is appropriate and to administer the recusal decision process in accordance with state law operates uniquely in furtherance of the state courts' ability to perform their judicial functions") (citation and internal quotation marks omitted).

Third, Plaintiff had and continues to have the opportunity to raise his claims here in state court criminal case and cannot show that the state court would not entertain any arguments that the WCSO was in "contempt of" or otherwise did not comply with the October 8, 2024 pretrial detention order, resulting in an alleged constitutional violation.  *See American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007) ("Abstention is appropriate unless state law clearly bars the interposition of constitutional claims") (citation omitted).  For *Younger*, it is sufficient that a plaintiff "ha[s] an opportunity to present their federal claims in the state court proceedings. . . There is no support . . . for the belief that state courts must have an actual hearing . . . in order for *Younger* and *Huffman* to apply. [Plaintiffs] need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, 430 U.S. 327, 337 (1977) (internal citation omitted). Under *Younger* abstention, "the burden of establishing the inadequacy of the state courts rests on the plaintiff." *Meyers v. Franklin Court of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001) (unpublished) (citation omitted).  The Supreme Court has recognized that important "state interests" are involved when the claims involve compliance with state court orders:

> A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself

8

affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in *Huffman.* But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of the administration of a State's judicial system[.] Whether disobedience of a court-sanctioned subpoena, and the resulting process leading to a finding of contempt of court, is labeled civil, quasi-criminal, or criminal in nature, we think the salient fact is that federal-court interference with the State's contempt process is an offense to the State's interest… likely to be every bit as great as it would be were this a criminal proceeding, Moreover, such interference with the contempt process not only unduly interfere[s] with the legitimate activities of the [State], but also can readily be interpreted as reflecting negatively upon the state court's ability to enforce constitutional principles[.]

*Juidice*, 430 U.S. at 335-36 (internal citations, footnote, and quotation marks omitted). The Wayne County Circuit Court routinely issues tether orders as a condition of pretrial release, is familiar with the tether process and what it entails, can adjudicate any constitutional issues arising from the failure of law enforcement to comply with their orders, and presumably has an important interest in ensuring that the WCSO complies with those orders in a timely fashion. *See* Mich. Comp. Laws § 600.1701(g) (outlining a state court's authority to hold in contempt "[p]arties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of court"); *In re Contempt of Auto Club Ins Ass'n*, 624 N.W.2d 443, 450 (Mich. Ct. App. 2000) ("[T]he power to hold a party in contempt is inherent in the judiciary as generally established in Const 1963, art 6, § 1"). Furthermore, in addition to seeking to hold a sheriff in contempt of a pretrial

9

detention order, a detainee has other possible remedies, such as seeking a writ of habeas corpus. *See* Mich. Ct. R. 3.303 (generally describing the state court habeas corpus process); Mich. Comp. Laws § 600.4301 et seq. (same); *Moses v. Dep't of Corr.*, 736 N.W.2d 269, 272 (Mich. Ct. App. 2007) ("A prisoner's right to file a complaint for habeas corpus relief is guaranteed by Const 1963, art 1, § 12") (citation omitted).

Fourth, Plaintiff cannot show any "bad faith, harassment, or some other extraordinary circumstance" that would warrant a possible refusal to abstain under these circumstances.

Finally, to the extent Plaintiff seeks to essentially "federalize" claims involving alleged non-compliance with state court orders, this would also weigh in favor of abstaining. The state courts and county sheriffs' offices are both familiar with routine pretrial detention orders and are in a better position to quickly and efficiently get to the bottom of any disputes regarding whether orders have been satisfied and/or whether any unusual delays have occurred in complying with them. (Exhibit 8, Chief Dunlap Decl. ¶ 5).

Therefore, Defendants respectfully request that the Court abstain from adjudicating Plaintiff's claims against them.

10

**B.      Alternatively. Chief Dunlap is Entitled to Qualified Immunity on Claims Asserted Against Him in His Individual Capacity.**

To the extent that Plaintiff alleges that Chief of Jails Robert Dunlap should be held liable in his personal capacity, the latter would be entitled to qualified immunity because: (1) as a high-ranking supervisor, he lacked sufficient personal involvement in Plaintiff's situation; and (2) there is no "clearly-established" law governing the proposed Fourteenth Amendment legal claim.

Government officials are entitled to qualified immunity on claims asserted against them under 42 U.S.C. § 1983 unless "they (1) violated a constitutional right (2) that was 'clearly established' at the time of the wrongdoing." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citation omitted).  Courts can resolve this inquiry under "either prong."  *Id*. (citation omitted). "The plaintiff bears the burden of showing that the right was clearly established. And to do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered."  *Id*. (citations omitted).  "For a right to be clearly established, existing *precedent* must have placed the statutory or constitutional question beyond debate."  *Id*. at 368 (emphasis in original) (citations omitted).  "[A]t a minimum, [the plaintiff] must provide on-point caselaw that would bind . . .  th[e] court."  *Id*.

11

     1.     <u>Chief Dunlap Lacked Sufficient Personal Involvement in Plaintiff's Situation to Be Held Liable in His Individual Capacity.</u>

Government officials "sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citations omitted). "Section 1983 liability . . . cannot be premised solely on a theory of *respondeat superior*, or the right to control employees. Supervisory officials are not liable in their individual capacities unless they either encourages the specific incident of misconduct or in some way directly participated in it.  At a minimum, a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. (citations omitted).

The Complaint does not make a single allegation of misconduct involving Plaintiff in which Chief Dunlap was personally involved, other than the fact that he is ultimately "responsible for the detention of persons . . . and for complying with Court orders regarding the detention and release from detention of persons detained in the CJC[.]" (Compl. ¶ 2).  Because the Complaint contains no allegations of the requisite "personal involvement" with Plaintiff's situation and/or other cognizable supervisory misconduct, and because Chief Dunlap cannot be held liable under a theory of *respondeat superior*, he fails to state a claim upon which relief can be granted. *See, e.g., Johnson v. Coffee*, No. 24-5468, 2024 U.S. App. LEXIS 28685, *2-3 (6th Cir. Nov. 12, 2024) (unpublished) ("[F]atal to [the plaintiff's] claims

12

against all defendants . . . is his failure to allege any personal involvement or active participation in any unconstitutional behavior on the part of these defendants"); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) (unpublished) ("[The plaintiff] failed to allege any personal involvement by defendant McGinnis in the alleged denial of medical treatment. To the extent that defendant McGinnis is sued because of his past position of authority, the doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute liability onto supervisory personnel").

Even if the Complaint did contain sufficient and plausible allegations, Plaintiff cannot raise a genuine issue of material fact because Chief Dunlap had no actual personal involvement in his situation or the efforts by the Tether Unit to enroll him in the tether program and was not aware of his particular situation until he was named in this lawsuit. (Exhibit 8, Chief Dunlap Decl. ¶ 2).

Therefore, because the Complaint fails to state a plausible Fourteenth Amendment claim and because Plaintiff cannot raise a genuine issue of material fact on any supervisory liability claim under § 1983, Chief Dunlap would be entitled to qualified immunity.

     2.    <u>Alternatively, There is No "Clearly-Established" and Binding Fourteenth Amendment Law Applicable to Plaintiff's Claim.</u>

In the alternative, even if Plaintiff had stated a plausible claim or could raise a genuine issue of material fact that Chief Dunlap had sufficient "personal involvement" in his particular situation, there is no "clearly established" and binding

13

Fourteenth Amendment law that addresses the contours and legal requirements of a claim that a county sheriff failed to comply in a reasonable amount of time with a state court order for pretrial release on tether.[4]  The Sixth Circuit requires that to overcome the "clearly established" prong of qualified immunity, a plaintiff must point to case law that "binds" the court. *See Bell*, 37 F.4th at 367. Plaintiff cannot point to any binding case law from the Supreme Court or the Sixth Circuit that establishes: (1) as a general proposition a Fourteenth Amendment right arising from an allegedly unreasonable delay with compliance with a state court pretrial release order; and/or (2) any case law that specifically addresses the constitutionally-adequate timing of compliance with state court pretrial release orders.

None of the cases cited in the Complaint are sufficiently analogous to Plaintiff's situation and/or binding on the Court.  The Supreme Court case *Baker v. McCollan*, 443 U.S. 137 (1979), addressed a claim that law enforcement officials had a constitutional duty when executing a facially-valid and judicially-authorized arrest warrant to independently investigate the arrestee's claims of innocence and

---

[4] Count I appears to assert a Fourteenth Amendment claim but does not specify if it is "procedural" or "substantive."  A procedural Due Process claim requires the establishment of: (1) a recognized life, liberty, or property interest; (2) a deprivation of that interest; and (3) the lack of available process. *Women's Medical Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). A substantive Due Process claim "'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (citation omitted).

14

concluded that they did not have such a general duty. *Id*. at 145-46. The federal habeas case *Zadvydas v. Davis*, 533 U.S. 678 (2001), dealt with a challenge to the removal timelines following a deportation under federal immigration laws, with the Supreme Court ultimately concluding that if an alien were not removed within six months of an order, the U.S. Government would have to provide a reasonable explanation for the delay. *Id*. at 701.

The unpublished Sixth Circuit case *Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007) (unpublished), dealt with a different issue and type of claim, where a plaintiff alleges that he/she was incarcerated for a significant time period and without justification past the expiration of a criminal sentence. There, the plaintiff alleged that he had been held by a county jail for months after the conclusion of his criminal sentence. *Id*. at 47-49. However, the Sixth Circuit has recently cast serious doubt on whether *Shorts* could and did "clearly establish" a general constitutional right under the Fourteenth or Eighth Amendment not to be held past a criminal sentence term. *See Jones v. Bottom*, 85 F.4th 805, 810-811 (6th Cir. 2023) ("Previously, we held that '[t]he right that [Jones] asserts – his right not to be detained past the expiration of his term of incarceration under the Fourteenth and Eighth Amendments – is one we have recognized as being established 'beyond dispute.' That conclusion, however, has shaky underpinnings. For one thing, it strikes at a high level of generality, something case law frowns upon. For another,

15

it was justified by a single citation to an unpublished decision, something our cases forbid. On these grounds, future parties may bear in mind the questionable nature of this 'clearly established' right") (internal citations omitted). Thus, not only did *Shorts* deal with a different issue – being held in custody past the expiration of a criminal sentence rather than an alleged unreasonable amount of time to comply with the conditions contained within a state court order of pretrial detention – the claimed rights at issue in *Shorts* itself was likely not "clearly established." At a minimum, even if it were binding, *Shorts* could not inform a reasonable official of any "clearly established" constitutional obligations arising from the compliance with a state court pretrial detention order that included a tether requirement.

Finally, the non-binding, out-of-circuit decision in *Lewis v. O'Grady*, 853 F.2d 1366 (7th Cir. 1988), cannot "clearly establish" for individuals within the Sixth Circuit any constitutional principles applicable to Plaintiff's situation. In *Lewis*, the plaintiff appeared before a state court at 10:30 a.m., where it was established that his identity had been mistaken with someone else. *Id*. at 1368. Because the plaintiff's second meeting with the state court that day resulted in him missing the 1:30 p.m. bus from the court back to the jail, he had to wait for a second bus at 6:00 p.m. and was ultimately released at 10:00 p.m. *Id*. The Seventh Circuit dismissed the individual defendants on qualified immunity grounds because of the lack of clearly established law regarding the reasonableness of the time it took to release the

16

plaintiff. *Id.* at 1370-71. At the same time, the Seventh Circuit held that the municipal liability claim – whether 11 hours was a reasonable amount of time for the sheriff's office to verify administratively the plaintiff's identity and to release him – was a question for the jury. *Id.* at 1369-70. This case cannot clearly establish constitutional precedent in the Sixth Circuit and because it dealt with a different issue – the constitutionally reasonable amount of time for law enforcement to conduct an administrative verification of someone's identity rather than compliance with the terms of a state court pretrial release order.

Therefore, because Plaintiff cannot demonstrate that the applicable Fourteenth Amendment law was "clearly established," Chief Dunlap would be entitled to qualified immunity on individual capacity claims asserted against him,

## C. Plaintiff Neither States a Claim Nor Can Raise a Genuine Issue of Material Fact on a Municipal Liability Claim Against Wayne County.

Municipal liability under § 1983 requires that a plaintiff: (1) establish that a municipal policy of custom was the "moving force" behind an alleged constitutional injury; (2) identify the policy or custom; and (3) demonstrate that the injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005). The four recognized theories of municipal liability are: (1) an unconstitutional legislative enactment or official written policy; (2) ratification of illegal actions by an official with final policymaking authority; (3) a policy of inadequate training or supervision; and (4) a custom or tolerance of or acquiescence

17

to constitutional violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Theories (3) and (4) additionally require the establishment of: "(1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citation omitted). Under "deliberate indifference" theories of municipal liability, "the violated right . . . must be clearly established because a municipality cannot deliberately shirk a constitutional duty unless that duty is clear." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-95 (6th Cir. 2017); *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (holding that "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established").

1.  Plaintiff Cannot Premise a Municipal Liability Claim on an Alleged Constitutional Right That Has Not Been "Cleary-Established."

Because Plaintiff's municipal liability claims are not premised on an "official written policy" or "ratification of known unconstitutional behavior by a subordinate," his "deliberate indifference" claims require the existence of recognized underlying constitutional violation premised on "clearly established"

18

law. *See Campbell v. Riahi*, 109 F.4th 854, 862 (6th Cir. 2024) ("[A] municipality cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established. Thus – because Officer Riahi did not violate a clearly established right – it follows that her employer, Butler County, was not deliberately indifferent to such a right") (internal citation and quotation marks omitted); *Arrington-Bey*, 858 F.3d at 994-95; *Hagans*, 695 F.3d at 511. As explained above in the preceding section on qualified immunity, no binding precedent from the Supreme Court or the Sixth Circuit has ever recognized the existence of a Fourteenth Amendment civil claim under § 1983 premised on an "unreasonable delay" in complying with a state court pretrial detention order conditioned on tether or any other condition. Because this cause of action has not previously been recognized in the Sixth Circuit, the legal standards, the elements of the cause of action, possible defenses, and/or case law guidance do not exist.

Because Plaintiff cannot premise a municipal liability claims on a "novel" legal theory, request that the Court adopt this new theory of liability, and then attempt to hold Wayne County retroactively liable for it, his claims fail to state a claim upon which relief can be granted.

2.    Alternatively, Any Delay in the Compliance with the State Court Tether Order Did Not Constitute a "Policy" or "Practice" of Wayne County.

Plaintiff alleges that Wayne County has a "policy" or "practice" of: (1) failing to be able to identify individuals in the Jail because of the maintenance of inadequate

19

electronic recordkeeping and "handwritten" inmate wristbands; (2) refusing to permit private tether companies access the Jail;[5] and (3) purposefully "understaffing" the Jail so that individuals cannot be processed out of the Jail in a timely manner. (Compl. ¶¶ 52-54). However, Plaintiff's allegations wholly fail to account for or even acknowledge the "actual" cause of the delay – the existence of the cyberattack that temporarily crippled the WCSO's electronic recordkeeping and law enforcement database systems at the precise moment in time that he was detained in the Jail. As explained above, any unusual delay in processing Plaintiff for tether monitoring was the result of the extraordinary efforts in having to manually account for every individual in the Jail, the inability to access the required resources to determine his eligibility for the tether program and to implement it, and the rolling backlog of those waiting for tethers starting on October 2, 2024 – and not because of allegedly "fading wristbands" or "understaffing." During normal times, it has taken 24-72 hours to evaluate and enroll an individual in a court-ordered tether program and there has been no general widespread "failure to release individuals" in a timely fashion. (Exhibit 8, Chief Dunlap Decl. ¶ 3). The Complaint's proposed timeline of "2-4 hours" for a tether release is completely unrealistic given the

---

[5] There is no recognized constitutional or federal or Michigan statutory right for a criminal defendant to elect to use a "private tether company" instead of a law enforcement agency. Private tethering is only available in Wayne County if a state court specifically orders it. (Exhibit 6, Lt. Rivers Decl. ¶ 3)

20

necessary steps to determine eligibility and to enroll someone in a tether program. (*Id*. ¶ 5).

In any event, municipal liability attaches only where a "deliberate choice to follow a course of action is made among various alternatives by the official or officials responsible for establishing final policy with respect the subject matter in question." *Pembaur v. City of Cincinnati*, 475. U.S. 469, 479 (1986). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and quotation marks omitted). The fact that the cyber incident occurred cannot constitute a "policy" or "practice" of Wayne County because it was an event outside of its control, it did not deliberately "choose" for it to happen, and it could only control how it attempted to remedy the effects of it.

Therefore, because any delay in complying with the state court tether order was not attributable to any Wayne County "policy" or "practice" that it purposefully and deliberately chose to adopt from various alternatives, Plaintiff cannot raise a genuine issue of material fact on this claim.

21

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court abstain or dismiss Plaintiff's claims against them.

Dated: December 18, 2024

Respectfully submitted,

By: /s/ *Davidde A. Stella*
Davidde A. Stella (P69948)
Anthony P. Monticciolo (P76013)
Assistant Corporation Counsel
Wayne County Corporation Counsel
500 Griswold St., 30th Floor
Detroit MI 48226
(313) 224-5030
dstella@waynecountymi.gov

*Attorneys for Defendants Chief
Robert Dunlap, the Wayne County
Sheriff, and Wayne County*

## LOCAL RULE CERTIFICATION

I, Davidde. A. Stella, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

## CERTIFICATE OF SERVICE

I certify that on December 18, 2024, I served, via e-filing, a copy of the foregoing upon all counsel of record at their respective addresses in the caption of these papers.  I further certify that I have mailed the foregoing document to the following: None.


Dated: December 18, 2024                    */s/ Rachelle LaCroix*
                                              Rachelle LaCroix, Paralegal

23