## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LIAM WEST-CAMPEAU, et al.,
suing individually and on behalf of a
class of similarly-situated persons,

        Plaintiff,

v.

ROBERT DUNLAP, sued in his
individual capacity, and JOHN
DOES 1-5, sued in their individual
capacities, RAPHAEL
WASHINGTON, in his official
capacity, and WAYNE COUNTY
MICHIGAN,

        Defendants.

Case No. 2:24-cv-12751

Hon. Mark A. Goldsmith

Mag. Judge David R. Grand

---

## MOTION TO DISMISS, TO ABSTAIN, AND/OR FOR SUMMARY JUDGMENT BY DEFENDANTS CHIEF ROBERT DUNLAP, THE WAYNE COUNTY SHERIFF, AND WAYNE COUNTY

Pursuant to E.D. Mich. L.R. 7.1(a), the undersigned counsel certifies that on March 18, 2025, he communicated in writing with counsel for Plaintiffs Ahnice Battle, Daniel Foltz, Bernard Foster, Tommy Hall, Charles LaLonde, Amber Morton, Darius Spears, Jessica Stackpoole, Daniel Stevenson, and Liam West-Campeau (collectively "Plaintiffs"), explained the nature of the relief sought by way

1

of this motion, and sought concurrence in the relief.  On the same day, Plaintiffs'

counsel expressly denied concurrence.

Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 56, Defendants Chief of

Jails Robert Dunlap, the Wayne County Sheriff, and Wayne County (collectively

"Defendants") move for the Court to dismiss, to abstain, and/or for summary

judgment on the claims asserted in the Amended Complaint.  In support of their

motion, Defendants rely upon the attached Brief.

Dated: March 20, 2025                       Respectfully submitted,

                                            By: /s/ *Davidde A. Stella*
                                            Davidde A. Stella (P69948)
                                            Anthony P. Monticciolo (P76013)
                                            Assistant Corporation Counsel
                                            Wayne County Corporation Counsel
                                            500 Griswold St., 30th Floor
                                            Detroit MI 48226
                                            (313) 224-5030
                                            dstella@waynecountymi.gov

                                            *Attorneys for Defendants Chief*
                                            *Robert Dunlap, the Wayne County*
                                            *Sheriff, and Wayne County*

2

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LIAM WEST-CAMPEAU, et al.,
suing individually and on behalf of a
class of similarly-situated persons,

        Case No. 2:24-cv-12751

        Plaintiffs,        Hon. Mark A. Goldsmith

        Mag. Judge David R. Grand

v.

ROBERT DUNLAP, sued in his
individual capacity, and JOHN
DOES 1-5, sued in their individual
capacities, RAPHAEL
WASHINGTON, in his official
capacity, and WAYNE COUNTY
MICHIGAN,

        Defendants.

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS, TO ABSTAIN, AND/OR FOR SUMMARY JUDGMENT BY DEFENDANTS CHIEF ROBERT DUNLAP, THE WAYNE COUNTY SHERIFF, AND WAYNE COUNTY

## CONCISE STATEMENT OF ISSUES PRESENTED

1.      Is Wayne County entitled to Eleventh Amendment immunity on the Fourteenth Amendment claims for money damages asserted against it under 42 U.S.C. § 1983?

2.      Is Chief of Jails Robert Dunlap entitled to quasi-judicial immunity on the Fourteenth Amendment claims for money damages asserted against him in his individual capacity under 42 U.S.C. § 1983?

3.      Alternatively, should the Court abstain under either the *Pullman* or *Younger* abstention doctrines?

4.      Alternatively, would Defendant Chief of Jails Robert Dunlap be entitled to qualified immunity on the Fourteenth Amendment claims for money damages asserted against him in his individual capacity under 42 U.S.C. § 1983?

5.      Alternatively, does the municipal liability claim asserted against Wayne County under 42 U.S.C. § 1983 state a claim upon which relief can be granted or raise a genuine issue of material fact?

## CONTROLLING OR MOST APPPROPRIATE AUTHORITY

Issue No 1:  Eleventh Amendment Immunity

*Abick v. Michigan*, 803 F.2d 874 (6th Cir. 1986).

*Ernold v. Davis*, 936 F.3d 429 (6th Cir. 2019).

*Gottfried v. Med. Planning Servs.*, 280 F.3d 684 (6th Cir. 2002).

*Jones v. Hamilton County Sheriff*, 838 F.3d 782 (6th Cir. 2016).

*Kerchen v. University of Michigan*, 100 F.4th 751 (6th Cir. 2024).

*McNeil v. Community Probation Services, LLC*, 945 F.3d 991 (6th Cir. 2019).

Issue No. 2:  Quasi-Judicial Immunity

*Bush v. Rauch*, 38 F.3d 842 (6th Cir. 1994).

*Garrison v. Wilson*, No. 24-1198, 2025 U.S. App. LEXIS 870 (6th Cir. Jan. 14, 2025) (unpublished).

Issue No. 3:  Abstention

*Aaron v. O'Connor*, 914 F.3d 1010 (6th Cir. 2019).

*American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328 (6th Cir. 2007).

*Gottfried v. Med. Planning Servs.*, 142 F.3d 326 (6th Cir. 1998).

*Juidice v. Vail*, 430 U.S. 327 (1977).

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982).

*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987).

*R.R. Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941).

iii

*Squire v. Coughlan*, 469 F.3d 551 (6th Cir. 2006).

*Younger v. Harris*, 401 U.S. 37 (1971).

Issue No. 4: Qualified Immunity

*Bass v. Robinson*, 167 F.3d 1041 (6th Cir. 1999).

*Bell v. City of Southfield*, 37 F.4th 362 (6th Cir. 2022).

*Hardrick v. City of Detroit*, 876 F.3d 238 (6th Cir. 2017).

*Moore v. Oakland County*, 126 F.4th 1163 (6th Cir. 2025).

*Women's Medical Prof'l Corp. v. Baird*, 438 F.3d 595 (6th Cir. 2006).

*Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983).

Issue No. 5: Municipal Liability

*Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988 (6th Cir. 2017).

*Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013).

*Campbell v. Riahi*, 109 F.4th 854 (6th Cir. 2024).

*Connick v. Thompson*, 563 U.S. 51 (2011).

*Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505 (6th Cir. 2012).

*Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

*Phillips v. Tangilag*, 14 F.4th 524 (6th Cir. 2021).

*Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. 2005).

**INTRODUCTION**

Via an Amended Complaint, Plaintiffs Ahnice Battle, Daniel Foltz, Bernard Foster, Tommy Hall, Charles LaLonde, Amber Morton, Darius Spears, Jessica Stackpoole, Daniel Stevenson, and Liam West-Campeau (collectively "Plaintiffs") assert a novel and previously-unrecognized Due Process claim under the Fourteenth Amendment premised on a county jail's failure to release a detainee in a "reasonable" amount of time after the conditions in a state court pretrial release order are met and/or on a county jail taking "too long" to enroll and release an individual in a state-court-ordered tether program. Neither the Supreme Court nor the Sixth Circuit has previously recognized the existence of such a theory of Fourteenth Amendment civil liability against county jails or their officials.

As explained below, Plaintiffs' claims asserted against Defendant Wayne County[1] and Chief of Jails Robert Dunlap fail as a matter of law. First, Eleventh Amendment immunity and quasi-judicial immunity shield Wayne County and Chief Dunlap, respectively, from claims seeking monetary relief. Alternatively, under the principles established by *R.R. Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941),

---

[1] To the extent that Plaintiffs name the elected Wayne County Sheriff, Raphael Washington, in his "official capacity," this is legally the same under 42 U.S.C. § 1983 as suing Wayne County itself. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). For the purposes of this motion, "Wayne County" shall include the "Wayne County Sheriff."

1

and/or *Younger v. Harris*, 401 U.S. 37 (1971), the Court should abstain to the Michigan state courts that issued the relevant pretrial detention orders. Alternatively, Chief Dunlap would be entitled to qualified immunity because of the lack of "on-point" and "binding" clearly-established Fourteenth Amendment law and for failure to establish cognizable constitutional violations.  Finally, even if Eleventh Amendment immunity did not apply, Plaintiffs' municipal liability claims would fail because: (1) there is no cognizable underlying constitutional violation; and/or (2) a municipality cannot be "deliberately indifferent" to a constitutional right that has not been "clearly established."

Despite alleging that Wayne County has a "longstanding" practice of purposefully or negligently "delaying" the release of individuals from its Jail, seven (7) of the ten (10) plaintiffs were detained at the discrete moment of time (October 2024) when a significant cyber-attack occurred on Wayne County systems that inevitably and extraordinarily caused delays and backlogs in processing already-issued and continuing state court orders. Additionally, the Amended Complaint's allegations pertaining to six (6) of the ten (10) plaintiffs (Battle, Foster, Morton, Spears, Stackpoole, and Stevenson) are so factually inaccurate that they cannot be used to support their individual legal claims.  Finally, there was no "unreasonable delay" in releasing the three Plaintiffs (Morton, Stackpoole, & Stevenson) who were not detained during the height of the cyber-attack.

2

## STATEMENT OF MATERIAL FACTS

Pursuant to the Court's Practice Guidelines, the facts are stated in numbered paragraphs and supported by citations to evidence.

### The Pretrial Detention Tether Process in Wayne County

1.     The Wayne County Sheriff's Office (the "WCSO") maintains a Tether Unit whose duties include processing state court pretrial detention orders that include tether provisions, assessing individuals' eligibility, enrolling them, and monitoring them for compliance. (Exhibit 1, Lt. Rivers Decl. ¶ 2).

2.     When a state circuit or district court within Wayne County orders a tether as a condition of pretrial or presentencing release, those orders are typically by default directed at the WCSO. Private tether companies cannot be used unless a state court specifically orders it. (*Id*. ¶ 3). The WCSO Tether Unit usually must process approximately 25-50 individuals per day who receive state court orders including a tether condition. (*Id*. ¶ 4).

3.     Processing individuals for tether generally includes the following steps: (1) consulting law enforcement networks for any holds or open warrants by other police agencies; (2) assessing one's eligibility for tether, which can include a number of factors, like the consideration of certain categories of prior misdemeanor and felony convictions, prior OWIs, prior tether order compliance, identifying past victims of the individual, etc.; (3) assessing whether the individual has a valid and

3

confirmable address (including applicable work addresses) from which a tether can be monitored, which can also include verification of a place of work and work schedule; (4) the tether participant reviewing and then completing the required paperwork and agreements; and (5) arrangements for payment or payment plans. The WCSO uses law enforcement databases and other means to run many of these required verifications. In the normal course, the processing for the tether program typically takes about 24 to 72 hours from the receipt of a court order.  Not all individuals with a tether order are ultimately deemed eligible for the program. The courts, prosecutors, and defense counsel are aware that this has been the normal processing time.  (*Id.*).

The October 2024 Cyber Incident

4.　　On October 2, 2024, WCSO computer systems were significantly impacted by a large outside cyber-attack. (Exhibit 2, Sgt. Foreman Decl. ¶ 2).  The timeline of events as they pertain to the WCSO is detailed in Exhibit 2.[2]  By October 15, 2024, the WCSO was able to restore access to most of its electronic systems and databases.

5.　　The cyber incident that began on October 2, 2024, had a significant impact on the operation of the Tether Unit. (Exhibit 1, Lt. Rivers Decl. ¶ 5). The

---

[2] Because of the nature of this cyberattack and its response, and because the law enforcement investigation into it remains ongoing, Defendants have requested that Exhibit 2 remain filed under seal.

electronic databases necessary for processing tether participants went offline. (*Id.*). As a preventative measure, many state courts also severed electronic communications with the WCSO. (*Id.*). The loss of the databases and routine electronic court communications meant that the WCSO could not access any electronic records in the queue for tether, including their personally identifying information and their court orders. (*Id.*). The Tether Unit could not access its required electronic tools and recordkeeping systems. (*Id.*). Additionally, the WCSO had to create a manual backup paper system for each and every individual housed in the Jail. (*Id.*). This was a significant effort. (*Id.*).

6.      Because the cyber incident eliminated access to the database information for those already subject to prior tether orders, a rolling backlog in processing individuals with tether orders inevitably occurred. (*Id.* ¶ 6). The lack of access to electronic records and databases significantly increased the normal time it took to process tethering requirements. (*Id.*).

7.      Because the cyber-attack effects were resolved by mid-to-late October 2024, there are currently no unusual delays in processing state court tether orders. (*Id.* ¶ 9).

The Individual Plaintiffs

**A.     Ahnice Battle**

8.      During 2024, Battle was charged with three misdemeanor offenses arising from different incidents in Canton Township – third degree retail fraud and two separate incidents involving driving with a suspended or revoked license. (35th District Court Case Nos. 24-C4076-OM, 24-C07421A-OT & 24-C10020A-OT) (Exhibit 3, Lt. Hall Decl. ¶ 2; Exhibit 4, Battle Documents).[3]

9.      On February 5, 2024, Battle was arrested on suspicion of retail fraud. Because she failed to appear at a subsequent hearing in the criminal case, the state court issued a bench warrant for her arrest on March 27, 2024.

10.     On July 21, 2024, Battle was cited for a criminal misdemeanor for driving with a suspended or revoked license. Because she failed to appear at a scheduled court hearing, the state court issued another bench warrant for her arrest on September 26, 2024.

11.     On September 30, 2024, Battle appears to have been taken into custody for driving on a suspended or revoked license, as well as for the two open bench warrants.  On the same day, the state court arraigned her on all three cases and entered pretrial detention orders requiring cash bonds totaling $900.  Battle did not

---

[3] Exhibits 4 through 13 compile the public court records for each Plaintiff.  The Declaration of Lt. Hall and public court documents provide the factual bases for each numbered paragraph.

pay the bonds. The state court set a pretrial hearing date for all three cases for October 9, 2024.

12.     Because of the continuing issues with the cyber-attack, the WCSO failed to produce Battle for the October 9, 2024 pretrial hearings.  As a result, the state court rescheduled the pretrial hearings for October 15, 2024.

13.     At the October 15, 2024 pretrial hearings, the state court entered an amended order that continued the $900 bonds but held that they could be converted the personal bonds if a tether could be installed and further permitted her to retain a private tether company if she chose.

14.     While it is currently unknown whether Battle attempted to retain a private tether company, despite the ongoing backlogs associated with the cyber-attack, the WCSO was able to evaluate her eligibility, enroll her, and install a tether before a private company was able to do so.  On October 24, 2024, she was released from the Jail.  Battle was detained in the Jail from September 30 to October 24, 2024.

15.     After Battle pled guilty to all charges, on February 11, 2025, the state court sentenced her on the retail fraud charge to twelve (12) months of probation, 21 days jail time with credit for time already served (resulting in no additional jail time) and a $325 fine.  For the other offenses, the court-imposed fines of $575 and $550.

16.     The Amended Complaint (¶¶ 153-172) contains at least the following material factual inaccuracies: (a) failing to acknowledge Battle's three separate

criminal cases; (b) failing to mention that until October 15, 2024, her state-court-imposed bonds required a $900 payment, which she did not pay; (c) misidentifying the October 9, 2024 date as an "arraignment" on a single case rather than a "pretrial hearing" on three separate cases, as she had already been arraigned in the three cases on September 30, 2024; and (d) stating that on October 15, 2024, she was ordered to be unconditionally released, while in reality her cash bond was still active until a private or public tether could be secured; and (e) stating that her "father" presenting an "order" on "September 24, 2024" was the actual cause of her release.

**B. Daniel Foltz**

17. On July 24, 2024, Foltz was arraigned in 18th District Court on third degree fleeing of a police officer and assaulting / resisting / obstructing a police officer. (Exhibit 5, Foltz Documents; Exhibit 3, Hall Decl. ¶ 3). The state court entered a pretrial order of release that included a $100,000 bond and a tether. (Wayne County Circuit Court Case No. 24-004576-01-FH).

18. On August 1, 2024, the state court amended the pretrial detention order to instead require a cash bond of $1,000 and a tether.

19. After Foltz paid the required bond, he was released from the Wayne County Jail on tether on August 7, 2024.

8

20.     On September 29, 2024, Foltz turned himself in on an open bench warrant issued on August 22, 2024, by the Oakland County Circuit Court in Case No. 2023-285070-FH and was arraigned there on September 30, 2024.

21.     On October 1, 2024, Foltz was returned to the Jail to replace the tether that had been removed as a matter of course by Oakland County officials.

22.     Due to the ongoing effects of the cyber-attack, there was an unusual delay in processing Foltz for a reattachment of the original tether.

23.     At a hearing held on October 22, 2024, the state court ordered that the tether requirement be removed as a condition of pretrial release.  On the same day, Foltz was released.  Foltz was detained in the Jail from July 24 to August 7, 2024, and from October 1 to 22, 2024.

24.     Following a guilty plea to one of the two charges, on December 6, 2024, the state court sentenced him to two (2) years of probation along with a fine of $1,498 that could be waived if 180 hours of community service were performed.

25.     The Amended Complaint (¶¶ 100-114) contains at least the following material factual inaccuracies: (a) stating that Foltz was "arrested" for "fleeing and eluding" on October 1, 2024, when on that day he was actually transported from the Oakland County Jail to the Wayne County Jail; (b) stating that some unidentified court issued an "order of release" on October 1, 2024, which did not occur and with

9

the state court docket further not reflecting that it occurred; and (c) stating his release from the Jail was on "October 23" when it appears to have been "October 22."

## C.   Bernard Foster

26.   On October 9, 2024, Foster was arrested for OWI – third offense. (Exhibit 6, Foster Documents; Exhibit 3, Hall Decl. ¶ 4) (Wayne County Circuit Case No. 24-006592-01-FH).

27.   On October 10, 2024, the 36th District Court arraigned Foster and entered a pretrial detention order that included a $20,000 personal bond and a GPS and alcohol tether.

28.   Because of the ongoing effects of the cyber-attack, the processing of the tether order was delayed.  He subsequently moved the state court to permit him to use a private tether company for his alcohol tether only.  On October 17, 2024, the Wayne County Circuit Court granted his motion.  On October 21, 2024, his bond conditions were continued.

29.   Because the pretrial detention order required that Foster have both a GPS tether and an alcohol tether, he could not be released on just an alcohol tether. On October 22, 2024, after a private company had installed the private alcohol tether, and after WCSO had completed the evaluation for a GPS tether, he was released. Foster was detained in the Jail from October 10 to 22, 2024.

10

30. On February 28, 2025, Foster pled guilty to the offense. His sentencing is currently scheduled for April 25, 2025.

31. The Amended Complaint (¶¶ 133-143) contains at least the following material factual inaccuracies: (1) stating that on "October 10, 2024," the state court ordered his unconditional release where the order actually provided for a GPS and alcohol tether; (2) omitting the fact that he moved for and received an order for a private company to install the alcohol tether only; and (3) omitting the fact that under the terms of the state court order, both tethers had to be installed.

**D.    Tommy Hall**

32. On or about October 12, 2024, Hall was arrested for operating while intoxicated while his license was suspended or revoked. (Exhibit 7, Hall Documents; Exhibit 3, Lt. Hall Decl. ¶ 5) (Wayne County Circuit Court Case No. 24-0006220-01-FH).

33. At his arraignment on October 14, 2024, the 36th District Court entered a pretrial detention order that included a $20,000 personal bond and a tether.

34. Because of the ongoing effects of the cyber-attack, the processing of the tether order was delayed. Hall was released on tether on October 21, 2024. Hall was detained in the Jail from October 14 to 21, 2024.

35. After Hall pled guilty to two of the charges, on March 5, 2025, the state court sentenced him to two (2) years of probation and fines or community service.

11

**E.     Charles LaLonde**

36.     Being the subject of a bench warrant issued by the Wayne County Circuit Court for failure to appear in a PPO case (Wayne County Circuit Court Case No. 23-106725-PP), on October 8, 2024, LaLonde was transported from Oakland County to the Wayne County Jail.  (Exhibit 8, LaLonde Documents; Exhibit 3, Lt. Hall Decl. ¶ 6).

37.      At his October 10, 2024 arraignment, the Wayne County Circuit Court entered an order for a $5,000 personal bond and that he refrain from contacting the petitioner in that matter.

38.     Due to the ongoing effects of the cyber-attack, the WCSO was unable for a short period of time to determine whether it could release him from the Jail before determining whether other law enforcement agencies wanted to detain LaLonde for other open warrants.

39.     The Canton Township Police Department requested that the WCSO detain LaLonde because of outstanding warrants in that jurisdiction.  On October 15, 2024, LaLonde was released from the Jail to the custody of the Canton Police.  The warrants from that jurisdiction were for failures to appear in 35th District Court in three separate matters driving while a license was suspended or revoked and one for possession of illegal narcotics paraphernalia. (35th District Court Case Nos. 24-

C03005A-OT, 24-C03301B-OM, 24-C03301A-OT & 24-C030662A).   LaLonde was detained in the Jail from October 8 to 15, 2024.

40.   At the October 16, 2024 arraignments in 35th District Court, LaLonde pled in each one and was subsequently sentenced on those offenses, which included a total of $2,400 in fines.

41.   The Amended Complaint (¶¶ 52-61) contains at least the following material factual inaccuracies by: (a) stating the WCSO "lost" LaLonde in the "system" when he was in reality presented to the Wayne County Circuit Court on "October 10, 2024," on his open bench warrant in the permissible amount of time to do so; (b) failing to acknowledge that he had open bench warrants issued by the 35th District Court and that he was not "released" to the public on October 15, 2024, but rather released to the custody of another law enforcement agency; and (c) stating that his "criminal charge" was dismissed when the 35th District Court did not "dismiss" these charges and where the PPO proceedings in Wayne County Circuit Court are not "criminal" in nature.

## F.   Amber Morton

42.   On October 6, 2024, Morton was arrested by the City of Wayne Police Department and subsequently charged with assault with a dangerous weapon, assaulting/resisting a police officer, and aggravated assault.   (Exhibit 9, Morton Documents; Exhibit 3, Lt. Hall Decl. ¶ 7) (Wayne County Circuit Court Case No.

13

24-006109-01-FH). At her arraignment on October 8, 2024, the 29th District Court entered a pretrial detention order for a cash bond of $1,000 and a tether. Morton did not pay the monetary portion of the bond.

43. On October 21, 2024, the state court continued the prior bond order. On October 28, 2024, following a preliminary examination after which she was bound over for trial in Wayne County Circuit Court, the state court modified her pretrial detention order to a $10,000 personal bond and a tether.

44. On October 31, 2024, after Morton was evaluated for the tether program and completed the necessary paperwork, she was released from Jail. Morton was detained in the Jail from October 8 to 31, 2024.

45. On December 9, 2024, Morton pled guilty to the assaulting/resisting and aggravated assault charges. On February 3, 2025, the state court sentenced her to two (2) years of probation, community service, and a fine.

46. The Amended Complaint (¶¶ 115-132) contains at least the following material factual inaccuracies: (a) stating that some unidentified court ordered her pretrial release without conditions on "October 16, 2024," when that did not occur; and (b) failing to acknowledge that the October 28, 2024, pretrial detention order that required the placement of a tether as a condition of her release.

14

## G.     Darius Spears

47.     It appears that on or about October 13 or 14, 2024, Spears was arrested. On October 14, 2024, Spears was arraigned in 36th District Court on two separate charges: (1) OWI – second; and (2) domestic violence.  On these charges, the court entered a pretrial detention order requiring a personal bond of $10,000 and a tether. (Exhibit 10, Spears Documents; Exhibit 3, Lt. Hall Decl. ¶ 8) (36th District Court Case Nos. 24-04527101-01-SD & 24-04517101-01-SM).

48.     Due to the ongoing effects of the cyber-attack, there was a delay in processing the state court's tether order. After evaluating his eligibility and upon his completion of the required paperwork, on October 21, 2024, Spears was released from the Jail on tether.

49.     Because of a subsequent violation of his tether order, Spears was brought back to the Jail on November 26, 2024, and released on December 4, 2024.

50.     Following Spears' guilty plea on the OWI charge, on January 22, 2025, the court sentenced him to 15 months of probation and fines.  Because the domestic violence case docket and file have been sealed by the state court, it is presently unknown what occurred in that case.

51.     The Amended Complaint (¶¶ 77-86) contains at least the following material factual inaccuracies: (a) failing to recount that Spears had two criminal charges, not one; (b) providing an incorrect date of arrest, as it was not "October 8,

15

2024;" (c) failing to mention that both October 14, 2024 pretrial detention orders contained tether requirements, rather than representing that they ordered some kind of unconditional release.

## H.     Jessica Stackpoole

52.     On or about October 14, 2024, Stackpoole was arrested by the City of Wyandotte Police Department on suspicion of domestic violence.  (Exhibit 12, Stackpoole Documents; Exhibit 3, Lt. Hall Decl. ¶ 9).  Following an arraignment on October 15, 2024, at which she pled guilty, the 27th District Court entered a pretrial detention order that included a $450 cash bond, a tether, and other conditions. (27th District Court Case No. 24-1492-SM).

53.     On October 17, 2024, the state court recorded that the monetary portion of the bond had been paid.  On the same day, the WCSO determined that Stackpoole was ineligible for tether because she lacked an appropriate address, as the address she provided had already been deemed ineligible by the state court.  The WCSO informed the state court of her ineligibility.

54.     At the next scheduled hearing on the case, on October 24, 2024, the state court ordered that Stackpoole's tether could be converted from WCSO to a private company tether.  On the same day, after Stackpoole's address was verified for tether eligibility, she was released from the Jail on a WCSO tether.

16

55.     On November 27, 2024, the state court sentenced Stackpoole to 45 days in the Wayne County Jail (for a total of 34 additional days because of a credit for 11 days for time already served), 18 months of probation, and $1,925 in fees and costs.

56.     Stackpoole turned herself into the Jail on December 2, 2024, to serve her sentence. On December 30, 2024, she was released. Stackpoole was detained in the Jail from October 15 to 24, 2024, and incarcerated from December 2 to 30, 2024.

57.     The Amended Complaint (¶¶ 87-99) contains at least the following material factual inaccuracies and/or omissions: (a) providing an incorrect date of arrest; (b) omitting the fact that the October 14, 2024 pretrial detention order contained both a monetary bond and tether requirement; (c) omitting the fact that despite posting the monetary bond on October 17, 2024, she was determined to be ineligible by the WCSO for tether and that fact was communicated to the state court; (d) omitting the fact that at her next scheduled hearing on October 24, 2024, that the 27th District Court permitted her the option of a private tether company but that the WCSO was able to secure its tether on the same day and released her; and (e) omitting the fact that on November 27, 2024, the 27th District Court sentenced her to 45 days in jail, and credited her for the eleven (11) days already spent in custody.

17

## I.      Daniel Stevenson

58.      During the second half of 2024, Stevenson was charged with multiple offenses in 25th District Court, 28th District Court, and Wayne County Circuit Court.  (Exhibit 12, Stevenson Documents; Exhibit 3, Hall Decl. ¶ 10).

59.      On August 10, 2021, the 25th District Court issued a bench warrant for Stevenson's arrest for failure to appear in a civil infraction case. (25th District Court Case No. 21-E549516B-SI).

60.      On August 3, 2024, Stevenson was arrested by the City of Southgate Police Department on suspicion of: (1) public intoxication / disorderly conduct; (2) assaulting / resisting / obstructing a police officer; and (3) domestic violence.

61.      On August 5, 2024, the 28th District Court arraigned Stevenson on the three charges.  On the public intoxication / disorderly charge, the state court entered a pretrial release order that included a monetary bond of $500 and a tether.  (28th District Court Case No. 24-0704-CM).  On the assaulting / resisting / obstructing a police officer and domestic violence, the state court entered a pretrial detention order that included a cash bond of $2,000 and a tether.  (Wayne County Circuit Court Case No. 24-004740-01-FH).

62.      On August 6, 2024, Stevenson appeared in 25th District Court on the prior-issued bench warrant.  The court imposed either a fine of $690 or ten (10) days in the Jail with credit for one (1) day served.

63. On August 23, 2024, Stevenson's bond in the assaulting / resisting and domestic violence case was reduced to a $1,000 cash bond and a tether.

64. Because he did not pay either cash bond, he was not eligible for release under the terms of the state court orders.

65. On September 10, 2024, following a guilty plea on the public intoxication / disorderly charge, the 28th District Court sentenced him to 30 days in the Jail, with credit for 30 days already served.

66. On September 16, 2024, Stevenson paid the bond in the Wayne County Circuit Court case.

67. On September 19, 2024, after the evaluation for his eligibility and enrollment, Stevenson was released on tether. Stevenson was detained or serving sentences in the Jail from August 5 to September 19, 2024.

68. On November 4, 2024, Stevenson pled guilty to assaulting / resisting / obstruction a police officer with the remaining domestic violence charge being dismissed. On December 4, 2024, the state court sentenced him to two (2) years of probation and various statutory and court costs.

69. The Amended Complaint (¶¶ 62-76) contains at least the following material factual inaccuracies: (a) stating that he was arrested on "August 4, 2024;" (b) failing to acknowledge the existence of his multiple cases; (c) stating that an unidentified court ordered a personal bond and a tether on "September 4, 2024,"

when no such order was entered; and (d) failing to acknowledge that he did not pay the monetary portion of the bond in Wayne County Circuit Court until September 16, 2024, and thus could not be released on tether until that event occurred.

## J.     Liam West-Campeau

70.     On September 11, 2023, West-Campeau pled guilty to attempted carrying of a concealed weapon.  On November 8, 2023, the Wayne County Circuit Court sentenced him to 12 months of probation and a fine.  (Exhibit 13, West-Campeau Documents).

71.     On or about September 17, 2024, a probation officer requested a warrant from the state court for West-Campeau's arrest for a possible violation arising from an incident that occurred on July 28, 2024. The next day, the state court authorized the warrant.

72.     On October 8, 2024, West-Campeau was arraigned on the violation. The state court entered a pretrial detention order on the conditions of a personal bond, a tether, and no alcohol consumption.

73.     At the time of his arraignment, the Tether Unit was still experiencing the significant and acute impacts of the cyber incident.  (Exhibit 1, Lt. Rivers Decl. ¶ 7).  Despite the backlog caused by the cyber-attack, he was added to the list and processed as soon as a manual count revealed that he was one of approximately 100+ individuals who had been authorized for tether by the state courts, provided that they

met the specified qualifications.  (*Id*.).  He was released from the Jail on October 14, 2024.  (*Id.* ¶ 8).

74.    After several adjournments, on February 7, 2025, the state court held a probation violation hearing, found him in violation, and ordered that his probation be extended for six months, to enroll in an anger management program, and that his tether be removed.

<u>The Present Lawsuit</u>

75.    On or about October 17, 2024, three days after his release from the Jail, West-Campeau filed the present case against Chief Robert Dunlap in his personal capacity, the Wayne County Sheriff, and Wayne County (collectively "Defendants") asserting one claim under 42 U.S.C. § 1983 – violation of the Fourteenth Amendment for "over detention / excessive custody."

76.    On January 29, 2025, Plaintiff filed an Amended Complaint that added the unique claims of nine (9) additional individuals.  On February 4, 2025, the Court denied as moot Defendants' previously-filed dispositive motion on West-Campeau's individual claims.

**ARGUMENT**

**A.    Eleventh Amendment Immunity Bars Plaintiffs' Fourteenth Amendment Claims for Money Damages Against Wayne County.**

Eleventh Amendment immunity bars Plaintiffs' claims for money damages against Wayne County because they are premised on the latter's execution of state

court orders of pretrial detention.  "The Eleventh Amendment . . . forbids a plaintiff from suing a state, a state agent, or a state instrumentality for monetary damages in federal court unless that state has consented to suit, or unless Congress has clearly and expressly abrogated the state's immunity to suit."  *Kerchen v. University of Michigan*, 100 F.4th 751, 761 (6th Cir. 2024) (citations omitted). The State of Michigan has not consented to suit in federal court.  *See Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  Because Michigan state courts are part of state government, they are entitled to claim Eleventh Amendment immunity from claims of money damages. *See Pucci v. Nineteenth District Court*, 628 F.3d 752, 763-64 (6th Cir. 2010).

Michigan law establishes that county sheriffs act as "officers of the court" for the purposes of the execution of court orders.  *See* Mich. Comp. Laws § 600.582 ("The sheriff and his deputies: (a) are officers of the court for the purpose of executing the process of the court; (b) may execute all lawful orders and process of the court in any county of the state"); *Eliason Corp. v. Bureau of Safety & Regulation of Mich. Dep't of Labor*, 564 F. Supp. 1298, 1306 (W.D. Mich. 1983) ("The sheriff and his deputies were obligated as 'officers of the court' to execute the warrant directed to them").  Indeed, Michigan law criminalizes and creates civil penalties for a sheriff's refusal to comply with state court orders for detention.  *See* Mich. Comp. Laws § 750.189 ("Any jailor or other officer . . . who shall willfully refuse to receive

22

into his custody any prisoner lawfully committed thereto, on any criminal charge or conviction, or any lawful process whatever, shall be guilty of a misdemeanor . . ."); Mich. Comp. Laws § 600.587 (imposing a fine for refusal to carry out a court order).[4]

For the purposes of Eleventh Amendment immunity, county sheriffs act as "arms of the state" when ordered by state courts to execute pretrial detention orders in criminal cases. *See McNeil v. Community Probation Services, LLC*, 945 F.3d 991, 995 (6th Cir. 2019) ("That means Tennessee directs Sheriff Helton to hold probationers in the county jail until they pay bail. And that, in turn, means he acts for the State when he takes the challenged action, detaining probationers under judge-set bail amounts"). The Sixth Circuit has applied Eleventh Amendment immunity on several occasions to sheriffs executing court orders. *See Gottfried v. Med. Planning Servs.*, 280 F.3d 684, 692-93 (6th Cir. 2002) (holding that Eleventh Amendment immunity barred claims against a county sheriff's office that was ordered by a state court to enforce the terms of a permanent injunction); *Jones v. Hamilton County Sheriff*, 838 F.3d 782, 785-86 (6th Cir. 2016) (holding that a county sheriff's office was entitled to Eleventh Amendment immunity on a Due Process "over-detention" claim where it was alleged that sheriff should not have

---

[4] Michigan law exclusively empowers its state judicial branch of government to determine appropriate pretrial release conditions. *See* Mich. Const. 1963, art 1, § 15; Mich. Comp. Laws § 765.1 et seq.; Mich. Ct. R. 6.106 (describing the process for making judicial pretrial release conditions including appellate options).

transported a prisoner to a state facility where the court did not impose incarceration beyond the period of pretrial detention).

For the purposes of Eleventh Amendment immunity, it is immaterial whether a plaintiff alleges that an entity acting as an arm of the state "fails to do [its] job . . . [because] for whom an official acts has nothing to do with how well [it] acts." *Ernold v. Davis*, 936 F.3d 429, 435 (6th Cir. 2019) (recognizing that there is no authority for a proposition that "if a county official acting on the State's behalf fails to do her job, that failure transforms the source of her power from the State to the county"). Therefore, allegations that a sheriff's office may have deficient performed or failed to perform its duties under the terms of a court order do not abrogate Eleventh Amendment immunity.

Here, because the state court orders of pretrial detention commanded in a non-discretionary manner that the Wayne County detain each Plaintiff unless certain preconditions were met, it was acting as an "arm" of the state judicial system. All but one (LaLonde) of the state court pretrial orders in Plaintiffs' cases at some point included either a cash bond, a mandatory tether requirement, or both. The state courts did not order that the tether had to be installed in a time certain; and the non-cyber-attack Plaintiffs (Morton, Stackpoole & Stevenson) fail to allege that the time it ultimately took was outside of the state courts' expectations. For Plaintiffs whose releases were affected by the cyber-attack, any resulting delays were reasonable

24

given the scale of incident and the rolling backlogs that were created.  In any event, whether a county acting as an "arm of the state" fails to perform its function, or negligently performs it, is irrelevant to the applicability of Eleventh Amendment immunity.  *Id*.

Because Wayne County acted as an "arm of the state" in executing the terms of state court pretrial detention orders, because Eleventh Amendment immunity protects entities from money damages claims arising from the performance of state-ordered duties, and because allegations that an "arm of the state" negligently performed or failed to perform its duties do not create any exception to the doctrine, Plaintiffs' Due Process claims fail as a matter of law.

## B.     Quasi-Judicial Immunity Bars the Claim Against Chief Dunlap.

The doctrine of quasi-judicial immunity shields Chief Dunlap from § 1983 money damages claims asserted against him in his individual capacity.  The Sixth Circuit has long recognized that the act of non-judicial officers "enforcing or executing a court order is intrinsically associated with a judicial proceeding." *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (citation omitted); *J.P. Silverton Indus. L.P. v. Sohm*, 243 F. App'x 82, 89 (6th Cir. 2007) (unpublished); *Jacob v. Ronayne*, No. 20-13370, 2022 U.S. Dist. LEXIS 4073, *11 (E.D. Mich. Jan. 7, 2022) (unpublished) (Goldsmith, J.) ("Absolute judicial immunity has bene extended to non-judicial officers who perform quasi-judicial duties. Quasi-judicial immunity

25

extends to those who perform functions closely associated with the judicial process")
(citations and quotation marks omitted).  Courts routinely apply the doctrine to
shield individual law enforcement officers from § 1983 claims arising from their
performance of executing court orders.  *See, e.g., Cooper v. Parrish*, 203 F.3d 937,
948 (6th Cir. 2000) ("We have held that an official is entitled to absolute quasi-
judicial immunity when that official acts pursuant to a valid court order because the
act of enforcing or executing a court order is intrinsically associated with a judicial
proceeding") (citation and quotation marks omitted); *Roseman v. Grant*, No. 24-
10830, 2024 U.S. Dist. LEXIS 84620, *7 n. 4 (E.D. Mich. May 9, 2024)
(unpublished) ("Courts have extended quasi-judicial immunity to sheriff and deputy
sheriffs executing facially valid court orders, such as when they execute the sale of
property pursuant to a judgment of foreclosure"); *Berry v. Napoleon*, No. 18-10585,
2018 U.S. Dist. LEXIS 110772, *11 (E.D. Mich. July 3, 2018) (unpublished) ("In
this case, [the sheriff] was carrying out the judges' orders in transporting and/or
housing Plaintiff during his state criminal proceedings. As such, he was acting as an
arm of the state court and is entitled to quasi-judicial immunity for those actions");
*Woodard v. Szabo*, No. 04-70017, 2005 U.S. Dist. LEXIS 50810, *12 (E.D. Mich.
June 20, 2005) (unpublished) ("Execution or enforcement of a court order is an
integral part of the judicial process.  Thus, courts have routinely applied the doctrine

26

to shield individuals from liability on claims arising from the execution or enforcement of an order") (citations omitted).

It is immaterial that a plaintiff may allege that an individual entitled to quasi-judicial immunity negligently executed a state court order.  The Sixth Circuit has recently reiterated that the applicability quasi-judicial immunity focuses on the function performed and not whether the individual performed that function correctly. *See Garrison v. Wilson*, No. 24-1198, 2025 U.S. App. LEXIS 870, *6-7 (6th Cir. Jan. 14, 2025) (unpublished) (citing *Cooper v. Parrish*, 203 F.3d at 945).  "[Quasi-judicial] immunity is not forfeit if the action taken was erroneous, malicious, or exceeded authority." *Campbell v. Patterson*, 724 F.2d 41, 43 (6th Cir. 1983) (citation omitted); *see Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988) ("The mere fact that an error is made in carrying out the judge's instruction is immaterial").  Here, in executing state court orders, Chief Dunlap acts as an "arm of the state" and allegations that he may have acted negligently or wrongfully in doing so do not affect the applicability of quasi-judicial immunity.

In *Garrison*, the Sixth Circuit further recognized that an application quasi-judicial immunity may look to whether there are sufficient alternative legal safeguards that will protect a plaintiff's rights. *See* 2025 U.S. App. LEXIS 870, at *6-7; *Hughes v. Duncan*, 93 F.4th 374, 380 (6th Cir. 2024) (holding that the application of quasi-judicial immunity was further supported by additional legal

27

protections to protect the plaintiff's rights, like the availability of state courts). In the context of pretrial detention, individuals have multiple options and remedies. At arraignments or in a subsequent request to modify a bond, individuals can argue that: (1) a court should not impose a tether condition in the first place; (2) the court should impose a private company tether; and/or (3) a pretrial detention order should set a time certain for law enforcement compliance.  After an order has been issued, they have the opportunity and right to return to and appear in the state court to raise those issues, whether informally, formally in the form of a motion to modify a bond, a motion for contempt, and/or a writ of habeas corpus. *See* Mich. Comp. Laws § 600.1701(g) (outlining a state court's authority to hold in contempt "[p]arties to actions, attorneys, counselors, and all other persons for disobeying any lawful order, decree, or process of court"); *In re Contempt of Auto Club Ins Ass'n*, 624 N.W.2d 443, 450 (Mich. Ct. App. 2000) ("[T]he power to hold a party in contempt is inherent in the judiciary as generally established in Const 1963, art 6, § 1"); Mich. Ct. R. 3.303 (writ of habeas corpus); Mich. Comp. Laws § 600.4301 et seq. (same).

Because Chief Dunlap acts as an "arm of the state court" in enforcing facially-valid state court orders, because allegations that an official normally entitled to quasi-judicial immunity performed an action negligently or wrongfully does not operate as an exception to the doctrine, and because Michigan law provides adequate

28

measures to safeguard the rights of pretrial detainees, he would be entitled to quasi-judicial immunity on the Due Process claims asserted against him.

**C.      Alternatively, the Court Should Abstain Under *Pullman or Younger*.**

1.      The Court Should Abstain Under *Pullman.*

The Court should abstain from adjudicating Plaintiffs' claims to the extent that the underlying possible constitutional question depends on what Michigan state courts consider compliance within a "reasonable amount of time" of the issuance of a pretrial detention order. Under the *Pullman* abstention doctrine, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question." *McLemore v. Gumicio*, No. 22-5458, 2023 U.S. App. LEXIS 15611, *5-6 (6th Cir. June 20, 2023) (unpublished) (quoting *Harris County Commr's Court v. Moore*, 420 U.S. 77, 83 (1975)); *White v. Kenny*, No. 15-13085, 2016 U.S. Dist. LEXIS 60738, *6-7 (E.D. Mich. May 9, 2016) (Goldsmith, J.) (unpublished) ("A federal court should decline to exercise jurisdiction where uncertain state law might be interpreted to avoid constitutional determinations, so as to honor important principles of federalism and avoid premature resolution of constitutional issues. Abstention is thus appropriate where state law is fairly

29

susceptible of a reading that would avoid the necessity of constitutional adjudication") (citations and quotation marks omitted).

*Pullman* abstention is particularly warranted here when any possible constitutional question alleging "over detention" would presumably depend upon, at least in part, a state court's expectation of what it considers "timely" compliance with a pretrial detention order in a particular matter, accounting for that case's particular facts and circumstances.  If the issue of whether an order was complied with in a timely manner were actually raised by a criminal defendant in a case, a state court's resolution of that issue could obviate the need for any potential collateral constitutional litigation in federal court.  However, what Plaintiffs seek in this case is for the Court to substitute its own judgment for that of the state courts on the issue of how "quickly" Wayne County should have complied. The state courts are in the best position to interpret the scope and meaning of their own orders.  *See Gottfried v. Med. Planning Servs.*, 142 F.3d 326, 330-31 (6th Cir. 1998) ("*Pullman* abstention is built upon the traditional avoidance of unnecessary constitutional decisions and the sovereign respect due to state courts. . . . Instead, federal courts should abstain and give the state official who is primarily responsible for the enactment the first opportunity to consider the scope of the injunction and its constitutional ramifications. After all, the state court that entered the injunction is

30

particularly well suited to decide this issue, especially where the constitutional claim is intertwined with the underlying injunction") (internal citations omitted).

Here, abstaining to the respective state courts for a determination of whether Defendants complied with their pretrial detention orders would likely obviate any need to decide their novel and previously-unrecognized Fourteenth Amendment claims presented here. If the state courts determine that the compliance was reasonable under the circumstances, then there cannot be a constitutional claim against them as the "source of any injury" would be the state courts.

2.    The Court Should Abstain Under *Younger*.

Under the *Younger* abstention doctrine, federal courts should abstain from deciding matters that would interfere with state criminal proceedings unless extraordinary circumstances exist. *See Younger v. Harris*, 401 U.S. 37, 44-45 (1971). *Younger* abstention is required when: (1) there is an ongoing state court criminal proceeding; (2) the criminal proceeding implicates important state interests; and (3) there is an adequate opportunity in the state court case to raise constitutional challenges. *Squire v. Coughlan*, 469 F.3d 551, 556 (6th Cir. 2006) (citation omitted).[5]  Exceptions to this doctrine exist only where the plaintiff can show "bad

---

[5] *Younger* abstention does and has traditionally applied to claims for money damages. *See Caroll v. City of Mount Clemens*, 139 F.3d 1072, 1075 (6th Cir. 1998). The fact that a plaintiff seeks money damages is only relevant to whether a court would "stay" rather than "dismiss" a case. *See id.* at 1076; *James v. Hampton*, 513

faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate[.]" *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 435 (1982).  All relevant *Younger* criteria are satisfied here.

First, nearly all Plaintiffs remain subject to a state court criminal proceedings because of ongoing probation periods.  Even if they were not, there is no legal bar for any of them to return to the state courts for a determination of whether Defendants complied with prior pretrial detention orders as Michigan law would not categorically bar a contempt motion even if a criminal case were technically closed.

Second, as a matter of law, state court criminal proceedings implicate important state interests. *See Younger*, 401 U.S. at 43 (recognizing that the policy against federal interference with ongoing state court criminal proceedings is "particularly" strong); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12-13 (1987) ("[T]he States have important interests in administering certain aspects of their judicial systems"). The state courts have a strong interest in ensuring that their own pretrial and interlocutory orders in criminal cases are enforced in a timely manner.  *See, e.g., Daves v. Dallas County,* 64 F.4th 616, 626 n. 17 (5th Cir. 2023) (en banc) ("Suffice it to say. . . that categorically excluding from the ambit of *Younger* abstention . . . constitutional claims involving bits and pieces of the criminal process, e.g., bail

---

F. App'x 471, 478 (6th Cir. 2013) (unpublished) ("Where abstention is appropriate, both doctrines require a district court to stay a complaint seeking money damages").

32

bonding or public defenders appointments, is fundamentally at odds with comity and federalism"); *Aaron v. O'Connor*, 914 F.3d 1010, 1017 (6th Cir. 2019) (where, for the purposes of *Younger* abstention, the Sixth Circuit stated: "We conclude that the ability of the courts of the State of Ohio to determine when recusal of a judge or justice is appropriate and to administer the recusal decision process in accordance with state law operates uniquely in furtherance of the state courts' ability to perform their judicial functions") (citation and internal quotation marks omitted).

Third, Plaintiffs have and continue to have the opportunity to raise their claims in the state courts and cannot show that they would not entertain any arguments that Defendants were in "contempt of" or otherwise did not comply with pretrial detention orders. *See American Family Prepaid Legal Corp. v. Columbus Bar Ass'n*, 498 F.3d 328, 332 (6th Cir. 2007) ("Abstention is appropriate unless state law clearly bars the interposition of constitutional claims") (citation omitted). For *Younger*, it is sufficient that a plaintiff "ha[s] an opportunity to present their federal claims in the state court proceedings. . . There is no support . . . for the belief that state courts must have an actual hearing . . . in order for *Younger* . . . to apply. [Plaintiffs] need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings, and their failure to avail themselves of such opportunities does not mean that the state procedures were inadequate." *Juidice v. Vail*, 430 U.S. 327, 337 (1977). "[T]he burden of establishing the inadequacy of the state courts

rests on the plaintiff." *Meyers v. Franklin Court of Common Pleas*, 23 F. App'x 201, 205 (6th Cir. 2001) (unpublished) (citation omitted).

Fourth, Plaintiffs cannot show any "bad faith, harassment, or some other extraordinary circumstance" that would warrant a possible refusal to abstain under these circumstances.

Therefore, because the requirements of *Younger* are met, Defendants respectfully request that the Court abstain from adjudicating Plaintiffs' claims.

**D.  Alternatively, Chief Dunlap Would Be Entitled to Qualified Immunity on the Fourteenth Amendment Claims Asserted Against Him in His Individual Capacity.**

Chief Dunlap would be entitled to qualified immunity on Plaintiffs' Due Process claims asserted against him. Government officials are entitled to qualified immunity on claims asserted against them under 42 U.S.C. § 1983 unless "they (1) violated a constitutional right (2) that was 'clearly established' at the time of the wrongdoing." *Bell v. City of Southfield*, 37 F.4th 362, 367 (6th Cir. 2022) (citation omitted). Courts can resolve this inquiry under "either prong." *Id*. (citation omitted). "The plaintiff bears the burden of showing that the right was clearly established. And to do so, a plaintiff must point to a case showing that reasonable officers would have known their actions were unconstitutional under the specific circumstances they encountered." *Id*. (citations omitted). "In identifying clearly established rights, the Supreme Court warns lower courts against defining them at a

34

high level of generality." *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025) (citation and quotation marks omitted). "For a right to be clearly established, existing *precedent* must have placed the statutory or constitutional question beyond debate." *Bell*, 37 F.4th at 368 (emphasis in original) (citations omitted). "[A]t a minimum, [the plaintiff] must provide on-point caselaw that would bind . . . th[e] court." *Id*.

1. Plaintiffs Cannot Satisfy Their Burden To Establish the Existence of "Clearly Established" Law.

For the purposes of qualified immunity, the only authorities that can provide the relevant "clearly established law" are precedent that "bind" the court. *See id.* ("Nor do [the plaintiff's] other cases help. All are either out-of-circuit or unpublished, and thus do not clearly establish anything as to the officers"). Plaintiffs cannot cite any "binding" and "on-point" case law that establishes the existence, contours, and/or legal elements a Fourteenth Amendment procedural or substantive Due Process claim against a sheriff's employee premised upon failure to comply with a state court pretrial detention order of release in a reasonable amount of time.

None of the cases cited in the Amended Complaint are binding, on-point, and at the requisite level of specificity. The Supreme Court in *Baker v. McCollan*, 443 U.S. 137 (1979), addressed a claim that law enforcement officials had a constitutional duty when executing a facially-valid and judicially-authorized arrest warrant to independently investigate the arrestee's claims of innocence and

35

concluded that they did not have such a general duty. *Id*. at 145-46. The federal habeas case *Zadvydas v. Davis*, 533 U.S. 678 (2001), dealt with a challenge to the removal timelines following a deportation under federal immigration laws, with the Supreme Court ultimately concluding that if an alien were not removed within six months of an order, the U.S. Government would have to provide a reasonable explanation for the delay. *Id*. at 701. The Amended Complaint only cites the latter case for a proposition that is arguably at the pinnacle of "generality" – a general right to "freedom from imprisonment."[6]

Because Plaintiffs cannot establish that the applicable Fourteenth Amendment principles were or are "clearly-established," Chief Dunlap would be entitled to qualified immunity.

---

[6] Unpublished Sixth Circuit cases do not bind the Court and cannot be used to demonstrate the existence of "clearly established law" at the required level of specificity. The holding in *Shorts v. Bartholomew*, 255 F. App'x 46 (6th Cir. 2007) (unpublished), was recently cast into serious doubt in *Jones v. Bottom*, 85 F.4th 805, 810-811 (6th Cir. 2023) ("Previously, we held that '[t]he right that [Jones] asserts – his right not to be detained past the expiration of his term of incarceration under the Fourteenth and Eighth Amendments – is one we have recognized as being established 'beyond dispute.' That conclusion, however, has shaky underpinnings. For one thing, it strikes at a high level of generality, something case law frowns upon. For another, it was justified by a single citation to an unpublished decision, something our cases forbid. On these grounds, future parties may bear in mind the questionable nature of this 'clearly established' right") (internal citations omitted).

36

2.      Plaintiffs Have Failed to Establish a Constitutional Violation.

The Amended Complaint does not specify whether it is claiming a violation of "procedural" or "substantive" Due Process.  A procedural Due Process claim requires the establishment of: (1) a recognized life, liberty, or property interest; (2) a deprivation of that interest; and (3) the lack of available process. *Women's Medical Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).  "Over-detention" is not a standalone, independent legal claim or theory but would rather be characterized as an alleged "consequence" of a Due Process violation.  "In order to prove a claim for denial of procedural due process, the plaintiff must plead and prove that a post-deprivation remedy is not available." *Bass v. Robinson*, 167 F.3d 1041, 1049 (6th Cir. 1999) (citation omitted) "In section 1983 damage suits claiming the deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong as inadequate.  In a procedural due process case under section 1983, the plaintiff must attack the state's corrective procedures as well as the substantive wrong." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983); *see Hardrick v. City of Detroit*, 876 F.3d 238, 247 (6th Cir. 2017) ("Any constitutional violation is not complete unless and until the State fails to provide due process. The plaintiffs need to show that Michigan offers no statutory or common law remedy") (citations omitted). Furthermore, "[s]tate tort remedies

37

generally satisfy the post-deprivation process requirement of the Due Process Clauses." *Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999).

Here, the Amended Complaint fails to allege the inadequacy of state court process to remedy any deprivation of liberty. Courts have uniformly held that where state courts and state law provide possible redress for an alleged deprivation of liberty or property interests, a procedural Due Process claim fails as a matter of law. *See, e.g., Bohler v. City of Fairview*, 830 F. App'x 465, 470 (6th Cir. 2020) (unpublished) ("[The plaintiff] has not prove[n] the inadequacy of state remedies, for example, a post-deprivation hearing. For one thing, [the plaintiff] did not even request a post-deprivation hearing, making it difficult for him to show the hearing would have been inadequate. For another thing, [the plaintiff] has not demonstrated why state judicial remedies would have been inadequate to address his complaints . . .") (citations omitted); *Coleman v. Perhne*, No. 24-10624, 2024 U.S. Dist. LEXIS 138455, *5-6 (E.D. Mich. Aug. 5, 2024) (unpublished) (holding that where a state prisoner failed to allege that Michigan state law and courts could not offer him a post-deprivation remedy for the alleged failure of state officials to safeguard his personal property, the procedural Due Process claim failed as a matter of law). Plaintiffs (except for LaLonde) were subject to state court orders of pretrial detention. As explained above, Plaintiffs and their criminal defense attorneys had the ability under Michigan law to bring any issues regarding the length of their

38

pretrial detention or the Wayne County's compliance with those orders to the state courts' attention, to file motions to modify their bonds, to file motions seeking to hold it in possible contempt, and/or to file writ of habeas corpus.  For Plaintiffs to claim that the state courts would have refused to hear and decide any issue regarding their pretrial detention they wanted to raise would lack any basis in theory or reality, especially when they largely did not even attempt to do so. Plaintiffs also fail to explain how state tort remedies could not adequately address any claimed injuries.

To the extent that the Amended Complaint could be interpreted to assert a "substantive" Due Process claim premised on a an alleged right not to be detained for past "five days" after an order of release (Am. Compl. ¶ 190), neither the Supreme Court nor the Sixth Circuit has recognized that a county jail failing to comply in a reasonable amount of time with a state court order of pretrial detention implicates those interests. Substantive Due Process is implicated when a government actor engages in "conscience-shocking" behavior. *McIntosh v. City of Madisonville*, 126 F.4th 1141, 1149 (6th Cir. 2025). "Only the most **egregious** official conduct can be said to be arbitrary in the constitutional, as opposed to conversational, sense." *Id.* (citation and quotations marks omitted) (emphasis added).  Furthermore, where a specific constitutional Amendment exists that covers a situation (like procedural Due Process), a substantive Due Process fails as a matter of law.  *See, e.g., Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013) (unpublished).

39

Not only would a more specific constitutional right apply here, namely procedural Due Process, Plaintiffs neither allege nor can establish the existence of "egregious" and "conscience-shocking" conduct. No Plaintiff not affected by the cyber-attack was "over detained" for "five days" after either the fulfillment of the state court's pretrial release conditions or had a tether installed five or more days after the order was entered. It is not "conscience-shocking" in a constitutional sense that when a jail's systems are compromised by an outside, unavoidable cyber-attack, that the delays associated with addressing those circumstances constitute the type of purposeful governmental overreach that would implicate substantive Due Process rights.  It is also not "conscience-shocking" that a county sheriff's office would requires a period of time to comply with a state court electronic monitoring order.

Because Plaintiffs cannot establish either a procedural or substantive Due Process claim, Chief Dunlap would be entitled to qualified immunity.

> 3.     <u>Alternatively, Chief Dunlap Would Be Entitled to Qualified Immunity on the Claims Asserted By Battle, Foster, Morton, Spears, Stackpoole, and Stevenson Because Their Claims are Premised on Inaccurate Facts.</u>

As explained above, Battle, Foster, Morton, Spears, Stackpoole, and Stevenson each premise their § 1983 claims on materially inaccurate facts – either mispresenting the period of their detention, the substance of their state court pretrial orders, their compliance with the pretrial detention orders, or all three.

40

Battle's allegations are inaccurate. She claims that: (1) she was arrested on September 30, 2024; (2) Wayne County then "lost her in the system;" (3) it failed to produce her for an October 9, 2024 "arraignment;" (4) on October 15, 2024, the state court ordered a personal bond only; and (5) she was released on October 24, 2024. In reality, on September 30, 2024, Battle was arraigned on three separate offenses in 35th District Court at which it state court ordered bonds totaling $900 which she did not pay.  Because of the effects of the cyber-attack, Wayne County did not produce her for her October 9, 2024, pretrial conference.  At the rescheduled October 15, 2024 pretrial hearing, the state court ordered that the cash bonds could be converted to personal ones if she could secure a tether, while also providing her the option of seeking a private company tether. She was released on October 24, 2024, after a Wayne County tether had been installed.

Foster's allegations are inaccurate.  He alleges that a state court ordered his unconditional release on "October 10, 2024," but that he was not released under "October 22, 2024."  While failing to account for the cyber-attack, he misrepresents the substance of the October 10, 2024 state court pretrial detention order – that required the installation of both a GPS and alcohol tether prior to his release.  He also fails to mention that he moved for and received an order for a private tether company to install only the alcohol tether but still had to receive a GPS tether from the WCSO.

41

Morton's allegations are inaccurate. She claims that: (1) she was arrested on October 9, 2024; (2) on October 16, 2024, she received an order of release from the state courts: and (3) she was not released until October 31, 2024.  In reality, she was arrested on October 6, 2024, and was arraigned on October 8, 2024, with the conditions of a $1,000 cash bond and a tether. At no time did she pay the cash bond portion of the bond. On October 21, 2024, the state court continued her pretrial release conditions.  On October 28, 2024, the state court modified her pretrial release conditions to convert the cash bond to a personal bond and tether.  On October 31, 2024, once a tether was secured, she was released.

Spears' allegations are inaccurate.  He claims that: (1) on October 8, 2024, he was arrested for domestic violence; (2) Wayne County "lost" him in the "system;" (3) on October 14, 2024, the state court ordered his unconditional release; and (4) on October 21, 2024, he was released.  In reality, it appears he was arrested on October 13 or 14, 2024.[7]  On October 14, 2024, he was arraigned on two separate offenses, and received a personal bond and tether requirement for pretrial release. Because of the delays attributable to the cyber-attack, on October 21, 2024, he was released on tether.

---

[7] Regardless of his actual date of arrest, he was not detained in the Wayne County Jail until October 14, 2024.

Stackpoole's allegations are inaccurate.  She claims that: (1) on October 13, 2024, she was arrested; (2) on October 15, 2024, the state court ordered her to be released on tether; and (3) on October 24, 2024, she was released.  In reality, it appears that Stackpoole was arrested on October 14, 2024.  On October 15, 2024, the state court arraigned her and conditioned pretrial release on the payment of a $450 cash bond and a tether.  On October 17, 2024, the state court reported that she had posted the cash bond. The WCSO determined that she was not eligible for tether because of her provision of an inappropriate address and then communicated that to the state court.  At the next scheduled hearing on October 24, 2024, the state court ordered that her tether could be converted from WCSO to a private tether company. However, the same day, the WCSO was able to release her on its own tether.

Stevenson's allegations are inaccurate.  He claims that: (1) on August 4, 2024, he was arrested for assault, resisting arrest, and obstruction of justice; (2) on September 4, 2024, the state court ordered his pretrial release on the conditions of a personal bond and tether; (3) on September 19, 2024, he was released.  In reality, it appears that he was arrested on August 3, 2024, for public intoxication / disorderly conduct, resisting and obstructing, and domestic violence.  He also had a prior bench warrant from another state district court.  On August 5, 2024, he was arraigned on the three charges. For the public intoxication charge, the state court entered a pretrial release order that included a cash bond of $500, a tether, among numerous other

43

conditions.  On the assaulting / resisting / obstructing a police officer and domestic violence, the state court ordered a cash bond of $2,000 and a tether. He did not pay the bonds.  On August 6, 2024, in regards to the bench warrant matter, the state court ordered him to pay a $690 fine or be incarcerated for 10 days with a 1 day credit for time served.  On August 23, 2024, Stevenson's bond in the resisting / obstructing and domestic violence case was reduced to a monetary bond of $1,000 and tether. On September 10, 2024, following a guilty plea to the disorderly charge, the 28th District Court sentenced him to 30 days in the Wayne County Jail, with credit for 30 days already served. On September 16, 2024, Stevenson paid the bond in the Wayne County Circuit Court case. On September 19, 2024, he was released on tether.

Therefore, because Battle, Foster, Morton, Spears, Stackpoole, and Stevenson premise their Fourteenth Amendment claims on inaccurate facts that do not state a claim under their own theories of liability, Chief Dunlap would be entitled to qualified immunity because they cannot establish a constitutional violation.

**E.     Plaintiffs Neither State a Claim Nor Can Raise a Genuine Issue of Material Fact on a Municipal Liability Claim Against Wayne County.**

Even if Eleventh Amendment immunity did not bar the claims against Wayne County, Plaintiffs' municipal liability claims fail as a matter of law because: (1) they have failed to establish an underlying constitutional violation; and (2) municipalities cannot be "deliberately indifferent" to claimed constitutional rights that are not "clearly-established."

44

1.    <u>Because Plaintiffs Cannot Establish the Existence of an Underlying Due Process Violation, Their Municipal Liability Claims Fail as a Matter of Law.</u>

As explained above, Plaintiffs cannot establish the existence of a procedural or substantive Due Process claim. Without an underlying constitutional violation, a municipal liability claim fails as a matter of law. *See Phillips v. Tangilag*, 14 F.4th 524, 537 (6th Cir. 2021) ("Without any evidence of such a constitutional violation, however, Phillips's claim against this entity must fail too"); *Craddock v. Wellpath, LLC*, No. 24-1536, 2025 U.S. App. LEXIS 1601, *16 (6th Cir. Jan. 23, 2025) (unpublished)  ("Without an underlying constitutional violation, [the plaintiff's] municipal liability claims against Macomb County and Wellpath fail").

Furthermore, Battle, Foster, Morton, Spears, Stackpoole, and Stevenson should be independently dismissed because their inaccurate factual allegations cannot form the basis for their legal claims.

2.    <u>Alternatively, a Municipality Cannot Be Liable for Constitutional Violation Unless It Had Been "Clearly Established."</u>

Municipal liability under § 1983 requires that a plaintiff: (1) establish that a municipal policy of custom was the "moving force" behind an alleged constitutional injury; (2) identify the policy or custom; and (3) demonstrate that the injury was incurred because of the policy or custom. *See Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005).  The four recognized theories of municipal liability are: (1) an unconstitutional legislative enactment or official written policy; (2) ratification

45

of illegal actions by an official with final policymaking authority; (3) a policy of inadequate training or supervision; and (4) a custom or tolerance of or acquiescence to constitutional violations. *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013). Theories (3) and (4) additionally require the establishment of: "(1) the existence of a clear and persistent pattern of [illegal activity]; (2) notice or constructive notice on the part of the [defendant]; (3) the [defendant's] tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the [defendant's] custom was the 'moving force' or direct causal link in the constitutional deprivation." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) (citation omitted).  Under "deliberate indifference" theories of municipal liability, "the violated right . . . must be clearly established because a municipality cannot deliberately shirk a constitutional duty unless that duty is clear." *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 994-95 (6th Cir. 2017); *Hagans v. Franklin County Sheriff's Office*, 695 F.3d 505, 511 (6th Cir. 2012) (holding that "a municipal policymaker cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established").

Because Plaintiffs' municipal liability claims are not premised on an "official written policy," his "deliberate indifference" claims require the existence of recognized underlying constitutional violation premised on "clearly established"

46

law. *See Campbell v. Riahi*, 109 F.4th 854, 862 (6th Cir. 2024) ("[A] municipality cannot exhibit fault rising to the level of deliberate indifference to a constitutional right when that right has not yet been clearly established. Thus – because Officer Riahi did not violate a clearly established right – it follows that her employer, Butler County, was not deliberately indifferent to such a right") (internal citation and quotation marks omitted); *Arrington-Bey*, 858 F.3d at 994-95; *Hagans*, 695 F.3d at 511. As explained above, no binding precedent from the Supreme Court or the Sixth Circuit has ever recognized the existence of a Fourteenth Amendment claim under § 1983 premised on an "unreasonable delay" in complying with a state court pretrial detention order.  Because the contours of any procedural or substantive Due Process rights have not previously been recognized, the legal standards, elements, possible defenses, and/or case law guidance do not exist.

Because municipal liability claims cannot be premised on constitutional principles that were not "clearly-established," Plaintiffs' claims fail to state a claim or would fail to raise a genuine issue of material fact.

> 3. <u>Alternatively, for Plaintiffs Battle, Foltz, Foster, Hall, LaLonde, Spears, and West-Campeau, Any Delay in the Compliance with the State Court Tether Order Did Not Constitute a "Policy" or "Practice" of Wayne County.</u>

In support of their theory of liability, Plaintiffs allege that: (1) compliance with tether orders should take no more than "2-4 hours;" (2) there is a clearly established right under the Fourteenth Amendment not to be detained over "five

47

days" after an order of pretrial release; (3) the Jail "loses" people in the facility because of inadequate wristbands; (4) they have a recognized constitutional right to arrange for private tethering companies;[8] (5) there are an "inadequate" number of tethers; and (6) there is inadequate staffing.  (Am. Compl. ¶¶ 184-200).

Despite being aware from the prior dispositive motion that a large cyber-attack affected Wayne County's systems during October 2024, Plaintiffs' Amended Complaint completely ignores that event and represents that for Battle, Foltz, Foster, Hall, LaLonde, Spears, and West-Campeau, their delays in being released was "standard operating procedure" under normal circumstances.  As explained above, any unusual delay in processing these Plaintiffs for tether monitoring was the result of the extraordinary efforts in having to manually account for every individual in the Jail, the inability to access the required resources to determine their eligibility for the tether program and to implement it, and the rolling backlog of those waiting for tethers starting on October 2, 2024 – and not because of allegedly "fading wristbands" or "understaffing."[9]

---

[8] There is no such established right.

[9] To the extent that the Amended Complaint alleges that the Jail has "2,500" adult inmates and that "2-4 hours" is a "reasonable timeframe" to evaluate and enroll someone in a state-court ordered tether, neither are true.  (Exhibit 14, Chief Dunlap Decl. ¶¶ 4-5).

In any event, municipal liability attaches only where a "**<u>deliberate choice</u>** to follow a course of action is made among various alternatives by the official or officials responsible for establishing final policy with respect the subject matter in question." *Pembaur v. City of Cincinnati*, 475. U.S. 469, 479 (1986) (emphasis added). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citation and quotation marks omitted). The fact that the cyber-attack occurred cannot constitute a "policy" or "practice" of Wayne County because it was an event outside of its control, it did not deliberately "choose" for it to happen, and it could only control how it attempted to remedy the effects of it. Therefore, because any delay in complying with the state court tether order was not attributable to any Wayne County "policy" or "practice" that it purposefully and deliberately chose to adopt from various alternatives, Battle, Foltz, Foster, Hall, LaLonde, Spears, and West-Campeau cannot raise a genuine issue of material fact on this claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss, abstain, or grant summary judgment on Plaintiffs' claims against them.

Dated: March 20, 2025

Respectfully submitted,

By: /s/ *Davidde A. Stella*
Davidde A. Stella (P69948)

Anthony P. Monticciolo (P76013)
Assistant Corporation Counsel
Wayne County Corporation Counsel
500 Griswold St., 30th Floor
Detroit MI 48226
(313) 224-5030
dstella@waynecountymi.gov

*Attorneys for Defendants Chief
Robert Dunlap, the Wayne County
Sheriff, and Wayne County*

## LOCAL RULE CERTIFICATION

I, Davidde. A. Stella, certify that this document complies with Local Rule 5.1(a), including: double-spaced (except for quoted materials and footnotes); at least one inch margins on the top, sides, and bottom; consecutive page numbering; and type size of all text and footnotes that is no smaller than 10-1/2 characters per inch (for non-proportional fonts) or 14 point (for proportional fonts). I also certify that it is the appropriate length. Local Rule 7.1(d)(3).  The length of the Brief conforms with the Court's March 20, 2025 Order.

## CERTIFICATE OF SERVICE

I certify that on March 20, 2025, I served, via e-filing, a copy of the foregoing upon all counsel of record at their respective addresses in the caption of these papers. I further certify that I have mailed the foregoing document to the following: None.

Dated: March 20, 2025                    */s/ Rachelle LaCroix*
                                          Rachelle LaCroix, Paralegal