UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIAM WEST-CAMPEAU, et al.,

      Plaintiffs,

v.

                                                Case No. 24-cv-12751
                                                HON. MARK A. GOLDSMITH

ROBERT DUNLAP, et al.,

      Defendants.

_____/

## OPINION & ORDER GRANTING DEFENDANTS' MOTION TO DISMISS, TO ABSTAIN, AND/OR FOR SUMMARY JUDGMENT (Dkt. 27)

Plaintiffs, who were inmates at the Wayne County Jail, bring this putative class action for damages against Defendants Wayne County, Chief of the Wayne County Jails Robert Dunlap, and Jane and John Does 1–5, for alleged violation of their substantive due process rights under the Fourteenth Amendment.[1]  See Am. Compl. (Dkt. 17).  Plaintiffs allege Defendants held them for an "unreasonable" period in the Wayne County Criminal Justice Center (Jail), after state courts had ordered them released from custody, subject to bond conditions.  Id. ¶¶ 193–199.  Before the Court is a motion to dismiss and/or for summary judgment filed by all Defendants (Dkt. 27).  For the reasons that follow, the Court grants Defendants' motion.[2]

## I.   BACKGROUND

---

[1] Plaintiffs are Liam West-Campeau, Charles LaLonde, Daniel L. Stevenson, Darius Spears, Jessica Stackpoole, Daniel Ken Folz, Amber Morton, Bernard Foster, Tommy Hall, and Ahnice Battle.  Am. Compl. at PageID.177–178.

[2] The briefing also includes Plaintiffs' response to Defendants' motion (Dkt. 32) and Defendants' reply (Dkt. 35).  The Court heard oral argument on the motion on November 18, 2025.

The material facts are not genuinely disputed for purposes of this motion.  Plaintiffs were all inmates at the Jail between August 4, 2024 and October 31, 2024.  See Am. Compl. ¶¶ 32–170. The detentions ranged from seven days to twenty-four days, except for one Plaintiff who was held for 45 days.  Hall Decl. at PageID.501–505 (Dkt. 27-3).[3]

The parties differ as to the cause for the length of the detentions.  Plaintiffs say they were over-detained because the Jail (i) did not have sufficient ability to track inmates; (ii) prohibits inmates from hiring private tethering companies; (iii) is understaffed; (iv) and does not have an adequate supply of tethers.  Am. Comp. ¶¶ 193–196.

According to Defendants, a source of delay was a cyber-attack for the period immediately preceding the filing of this suit.  From October 2 to October 15, 2024, the Jail could not access databases that were necessary for managing the jail, including processing tethers.  Foreman Decl. at PageID.788–789 (Dkt. 29) (SEALED).[4]  This complicated the tether processing, which involves several steps, all of which take time.  Rivers Decl. at PageID.496 (Dkt. 27-1).[5]  These steps include: (i) searching law enforcement databases to determine if an individual is subject to a hold or warrant in another jurisdiction; (ii) assessing eligibility for a tether which includes evaluating an individual's criminal history and prior tether compliance; (iii) assessing the individual's home

---

[3] Lieutenant Robert Hall works for the Wayne County Sheriff's Office and reviewed records kept in the ordinary course of business by Wayne County Sheriff's Office.  Hall Decl. at PageID.501.

Stevenson (held 45 days) was charged in two cases and subject to two pretrial orders requiring bonds and tethers.  Hall Decl. at PageID.505.  After 36 days of detention, he pled guilty in one case and was sentenced to 30 days in Wayne County Jail with credit for time served.  Id.  He paid the bond in the second case and was released on tether three days later.  Id.

[4] Sergeant Britton Foreman is the Sergeant of I.T. Operations/Digital Forensics for the Wayne County Sheriff's Office.  Britton Decl. at PageID.787 (SEALED).

[5] Lieutenant Chivas Rivers supervised the Tether Unit during all times relevant to this case.  Rivers Decl. at PageID.495.

address, work address, and work schedule to determine whether they can be monitored there; (iv) meeting with the individual to review and sign paperwork; and (v) arranging payment or setting up payment plans.  Id.  As a result of the cyber-attack, all inmates had to be manually accounted for and the Jail had to create a paper system to track court dates and court orders.  Foreman Decl. at PageID.at PageID.789.

Aside from tether issues and the cyber-attack, individual circumstances of detainees also appear to have played a role in the length of detentions.  Some had issues meeting bond conditions, including coming up with bond money or supplying an acceptable address necessary to receive a tether.[6]

However, the precise reasons for the delay in release are not material because Plaintiffs have not plausibly pled a constitutional violation.

## II.    ANALYSIS[7]

---

[6] Battle (held 24 days) and Morton (held 23 days) were ordered released subject to posting bond and being placed on tethers.  Hall Decl. at PageID.501–504.  Battle and Morton did not pay the bonds, which resulted in their delayed release.  Id.  Stackpoole (held 9 days) was ordered released subject to bond and a tether.  Id. at PageID.504.  She posted bond after two days, but during the tether registration process, she could not provide an acceptable address.  Id.  The Jail communicated this issue to the state court and at Stackpoole's next hearing, the state court offered her the option to retain a private tethering company.  Id.  Stackpoole was then able to provide a satisfactory address, and she was released on a tether the same day.  Id.

[7] Because Defendants style their motion as both a motion to dismiss and for summary judgment, two standards of review are applicable.  To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).  The plausibility standard requires courts to accept the alleged facts as true and to make all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Under Rule 56, the movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

Plaintiffs' amended complaint alleges one count of "wrongful deprivation of liberty through over-detention/excessive custody" in violation of the Fourteenth Amendment under 42 U.S.C. § 1983 against all Defendants.  Am. Compl. at PageID.208.  As Plaintiffs explain in their response brief, this is a substantive due process claim.  Resp. at PageID.832, 838.

Municipal and individual liability under § 1983 requires a violation of a federal statute or the U.S. Constitution.  Capen v. Saginaw Cnty., 103 F.4th 457, 462 (6th Cir. 2024).  "Section 1983 is not itself a source of any substantive rights, but instead provides the means by which rights conferred elsewhere may be enforced."  Meals v. City of Memphis, 493 F.3d 720, 727 (6th Cir. 2007).  "[F]ailure to establish any violation of a federal right" is grounds to dismiss for failure to state a claim under § 1983.  Wiles v. Ascom Transp. Sys., 478 F. App'x 283, 295 (6th Cir. 2012).  A court's "first task [] is to identify the specific constitutional or statutory rights allegedly infringed."  Meals, 493 F.3d at 727–728 (punctuation modified).

The Fourteenth Amendment of the United States Constitution protects individuals from the deprivation of "life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The substantive due process component of the Fourteenth Amendment bars "certain government actions regardless of the fairness of the procedures used to implement them."  Daniels v. Williams, 474 U.S. 327, 331 (1986).  Substantive due process claims "often fall into one of two categories:" (i) "claims that an individual has been deprived of a particular constitutional guarantee," or (ii) "claims that the government has acted in a way that shocks the conscience."  Handy-Clay v. City of Memphis, 695 F.3d 531, 547 (6th Cir. 2012) (punctuation modified).

Plaintiffs' theory of the case proceeds under the first category only, as their complaint and briefing on the motion fail to make allegations or arguments regarding a "shock the conscience" theory. [8]

The Supreme Court has recognized "discrete substantive protections for fundamental rights and liberties unmentioned in the Constitution." Gore v. Lee, 107 F.4th 548, 562 (6th Cir. 2024) (punctuation modified). Because these fundamental rights are not "textual[ly] anchor[ed]" in the Constitution, the Supreme Court only "reluctant[ly] expands substantive due process rights." Id. Because of this reluctance, "any purported substantive due process right must be deeply rooted in this Nation's history and tradition" and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Id. (punctuation modified).

Plaintiffs argue that "pretrial inmates have a fundamental right to be released from detention within a reasonable time after a court orders their release" and that detention beyond that "reasonable time" violates their substantive due process rights. Resp. at PageID.809–810. In opposition, Defendants argue that Plaintiffs have not asserted a plausible claim because Plaintiffs have not identified a United States Supreme Court or Sixth Circuit case recognizing a pre-trial right to prompt release behavior. Mot. at PageID.479–480; Reply at PageID.878. The Court agrees with Defendants.

Courts have recognized the fundamental nature of the liberty interest at stake in bail matters in particular contexts. Thus, where a defendant challenged the Bail Reform Act of 1984 as a violation of substantive due process for allowing pretrial detention based on dangerousness, the

---

[8] Review of the amended complaint confirms that there are no facts that would substantiate a "shock the conscience" theory. Facts that show mismanagement, understaffing, budgetary challenges, and tether shortages, Am. Comp. ¶¶ 195–196; 198, while distressing, are hardly shocking. Such allegations do not show "egregious official conduct" that is "so brutal and offensive" as to "not comport with traditional ideas of fair play and decency"—the standard recognized as conscience shocking behavior violative of substantive due process. Handy-Clay, 695 F.3d at 547–548 (punctuation modified).

5

Supreme Court recognized "the individual's strong interest in liberty" and "the important and fundamental nature of this right," even though it ultimately found the statute constitutional. United States v. Salerno, 481 U.S. 739, 750 (1987). Similarly, a challenge to a state statute severely restricting the opportunity for bail to defendants who had entered the country illegally was found to implicate a "fundamental right." Lopez-Valenzuela v. Arpaio, 770 F.3d 772, 780–782 (9th Cir. 2014).

However, Plaintiffs do not claim that they have been denied bail. They claim that they were denied their alleged right to have a state judge's bond order implemented within a reasonable time. Resp. at PageID.809–810. They point to no case recognizing such a right, much less one that says it is fundamental right. In fact, the only case addressing whether unreasonable delay in implementing a bond order implicates a fundamental right answered that question in the negative. See Dawson v. Bd. of Cnty. Comm'r of Jefferson Cnty., 732 F. App'x 624 (10th Cir. 2018).

In Dawson, the plaintiff brought a § 1983 action based on a factual scenario in ways somewhat analogous to the instant case. He remained detained in a county jail, despite posting bail, because the court-ordered tether condition could not be implemented over the weekend during which he was held. Id. at 625. The Tenth Circuit held that the plaintiff's claimed right to be free from detention in those circumstances was not fundamental. Id. at 630–632 (finding no fundamental right after applying test of whether the right was "deeply rooted in this Nation's history" and "implicit in the concept of ordered liberty") (punctuation modified).

In addition to the lack of precedent, nothing in the context of the alleged deprivation demonstrates that the claimed right would be implicit in the concept of ordered liberty. While the delay Plaintiffs endured was surely frustrating, it is explainable, at least in part by forces beyond

6

the Defendants' control—a cyberattack, understaffing, and individual inmates' failure to meet bond conditions.

Further, Plaintiffs had a prompt corrective for any delay that they thought was unreasonable: they could have sought relief from the judge whose order was not being implemented promptly enough.  Such a remedy would have provided swift relief and would have been tailored to the precise circumstances causing the alleged delay.  It would provide an almost instant answer to the question of how much delay—based on particular circumstances—was reasonable.  A judge's inquiry into the implementation of her order would have provided a faster, simpler, and smarter solution than a damage remedy coming years later, with far greater attendant costs to the litigants and the respective court systems.

Our nation's legal traditions have entrusted judges who set bail with the authority to monitor and modify their orders.  See, e.g., Mich. Comp. Laws. § 765 et seq.; Mich. Ct. R. 6.106. And our legal traditions respect the primacy of state courts to administer state criminal cases.  See, e.g., Bonner v. Cir. Ct. of City of St. Louis, 526 F.2d 1331, 1336 ("Congress and the federal judiciary have consistently recognized that federal courts should permit state courts to try state cases….").  Bond matters are an essential feature of the state criminal process that federal courts must respect.

That long history informs what is implicit in the concept of ordered liberty regarding delays in implementing bond orders.  Given the historic availability of such relief from the court that issued the order, the claim that there exists a fundamental federal right to have a state judge's order implemented within a reasonable timeframe—which would be enforceable with a federal court damage remedy—rings hollow.

Plaintiffs cite several cases, which they argue demonstrate they have pled a constitutional guarantee.  Resp. at PageID.831–844.  None of these cases, however, stands for the proposition that there is a federal constitutional guarantee to be released within a "reasonable time" once a state court bond has been set.

One of Plaintiff's cases is <u>Barnes v. District of Columbia</u>, 793 F. Supp. 2d 260 (D.D.C. 2011), which invalidated a District of Columbia ordinance that barred inmate releases on bail between 10 p.m. and 7 a.m.  The court did not find that the detainees enjoyed a right to be released within a reasonable time.  Instead, the court found that the D.C. jail violated inmates' substantive due process rights by imposing an arbitrary prohibition against releasing inmates during a particular time of the day.  <u>Id.</u> at 278.  Here, Plaintiffs have not identified any arbitrary rule that bars the detainees' release.

Another case offered by Plaintiffs similarly fails to recognize a right to be released within a reasonable period of time following issuance of a bond order.  In <u>Gaylor v. Does</u>, 105 F.3d 572, 574 (10th Cir. 1997), the plaintiff was incarcerated in a county jail for five days without a hearing before a magistrate and without information about his bail status, even though a magistrate had set plaintiff's bail the day following his arrest.  The plaintiff would have been released had he known that his bail was set, but the defendants had a policy of not informing detainees of their bail status.  <u>Id.</u> at 578.  The court held that the defendants failed to assert a legitimate goal "for a policy of informing a detainee of his bond status only if he asks," and therefore the pretrial detainment was punitive.  <u>Id.</u> at 577–578 (punctuation modified).  Here, there is no similar policy of not disclosing bail status to an inmate.

A third case cited by Plaintiffs that misses its mark is <u>Buchicchio v. LeBlanc</u>, 656 F. Supp. 3d 643 (M.D. La. 2023).  This case involved the 12-week over-detention of an inmate at the

expiration of his sentence due to an error in calculating his sentence.  The court found that the plaintiff had asserted a plausible substantive due process claim because he had a clearly established right for timely release from prison upon completion of his sentence.  Id. at 656.  Buchicchio is not comparable because Plaintiffs in this case have not been sentenced—they were all detained pre-trial or after a probation violation.  Am. Compl. ¶ 175.

Plaintiffs' citation to Cushman v. Monroe County, No. 20-00004, 2022 WL 964192 (W.D. Ky. Mar. 30, 2022) is also misguided.  Resp. at PageID.838–839.  There, the plaintiff was ordered released on bond pretrial subject to a tether.  Cushman, 2022 WL 964129, at *1.  A private tether vendor refused to provide the plaintiff with a tether, even though the tether fee was allegedly tendered to him.  The court found that the plaintiff had stated a due process claim because the tether vendor "actively prevented Cushman from meeting the requirements for his release."  Id. at *6.  No such active interference is alleged here.

Plaintiffs' citation to United States v. Mendenhall, No. 23-20651, 2024 WL 5199344 (E.D. Mich. Dec. 3, 2024) is also unavailing.  Resp. at PageID.833.  Mendenhall was a criminal case, in which the court determined that the defendant's continued pretrial detention had become excessive, thus requiring that he be admitted to bail.  Mendenhall, 2024 WL 5199344 at *1, *8.  Grounded in the Eighth Amendment right to bail and the Bail Reform Act, that criminal case has no bearing on the instant civil case.[9]

The individual defendants also prevail on qualified immunity grounds because any alleged right to release within a reasonable period following issuance of an order granting bond was not "clearly established" when Plaintiffs were allegedly over detained.  "Qualified immunity protects

---

[9] Similarly, Plaintiffs' citation to Love v. Ficano, 19 F. Supp. 2d 754 (E.D. Mich. 1998) misses the mark because it is a habeas case, unlike the instant case. Plaintiffs do not seek their release from custody, which habeas would provide; they seek damages.

government officials unless they (1) violated a constitutional right that was (2) clearly established." DeVooght v. City of Warren, Michigan, 157 F.4th 893, 898 (6th Cir. 2025). "A right is clearly established when every reasonable official would have understood that what he is doing violates that right." Id. at 902–903 (punctuation modified). Plaintiffs bear the burden of showing that the right was clearly established by "identifying binding, on-point precedent." Id. at 903. "In determining whether a constitutional right is clearly established, we look first to decisions of the Supreme Court, then to decisions of this court and other courts within our circuit, and finally to decisions of other circuits." Benison v. Ross, 765 F.3d 649, 664 (6th Cir. 2014) (punctuation modified). As discussed above, Plaintiffs provide no binding or on-point precedent. Resp. at PageID.831–844. Therefore, the right they invoke was not clearly established law.

Wayne County also prevails because Plaintiffs have failed to plausibly allege a violation under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). "Under Monell, a § 1983 plaintiff may not hold a municipality vicariously liable for the unconstitutional actions of its officers." Hehrer v. Cnty. of Clinton, 161 F.4th 955, 967 (6th Cir. 2025) (punctuation modified). "Municipal liability only attaches where a custom, policy, or practice attributable to the municipality was the 'moving force' behind the violation of the plaintiff's constitutional rights." Heyerman v. Cnty. of Calhoun, 680 F.3d 642, 648 (6th Cir. 2012). But when there is no underlying constitutional violation, there can be no Monell liability. Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014). Given that the Court has found there was no federal constitutional violation, Plaintiffs have failed to plead a Monell claim against Wayne County.

### III. CONCLUSION

For the reasons explained above, the Court grants the Defendants' motion to dismiss and/or for summary judgment (Dkt. 27).[10]

**SO ORDERED.**

Dated: March 25, 2026          s/Mark A. Goldsmith
Detroit, Michigan              MARK A. GOLDSMITH
                               United States District Judge


## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2026.

                               s/Joseph Heacox
                               JOSEPH HEACOX
                               Case Manager

---

[10] Because Plaintiffs' claim fails for failure to state a claim and qualified immunity, the Court need not address other issues raised in the briefing, including Eleventh Amendment immunity, quasi-judicial immunity, and abstention.  See Mot. at PageID.461–474; Resp. at PageID.810–831.

11